## C. A. GREEN et al. *vs.* HUGH CRAFT.

The term " taxes " includes all contributions imposed by the government upon individuals for the service of the State. The individual, and not the property, pays the tax, and the property is resorted to for the purpose of ascertaining the amount of the tax with which the owner must be charged, and for the purpose of enforcing payment when the owner shall be legally in default in paying at the time stipulated by law.

No person is a tax payer, until he has been so declared by the proper officer.

The assessment must be as certain in designating the person chargeable with the tax at the commencement of the fiscal year, as it must be in designating the amount of the charge, and the property to which reference is made for the purpose of ascertaining such amount. *Held*, that an assessment must be thus made in order to create a liability on the part of an individual to pay the tax, and if no such assessment is made, no liability is created.

To authorize a tax collector to sell property to enforce the payment of taxes, there must be both a legal liability on the part of the owner to pay the tax, and a legal default in making payment.

The statute (Hutch. Code, p. 190, § 30) requires the clerk of the probate court of each county to keep a " file book," in which he shall enter a list of all lands sold for taxes, together with the owners' names, the name of the purchaser, and the date of the sale. *Held*, that if from the assessment no such book could be made by the clerk as the law requires, containing the name of the owner, the sale would be held void; and in this case the land was not assessed in the name of the owner, for which defect the sale is void.

IN error from the northern district chancery court at Holly Springs; Hon. Henry Dickinson, vice-chancellor.

The opinion of the court, and the points made in Mr. Davis's brief, contain a sufficient statement of the facts of the case.

Green et al. *v.* Craft.

*O. Davis*, for appellants.

In this case, the vice-chancellor set aside a sheriff's deed for land sold for taxes, on the ground that it was not assessed in the name of the owner at the time of assessment.

The land was sold in 1847, for the taxes of the fiscal year of 1846. The act of 1846, Hutch. Code, p. 190, § 31, and the act of 1848, Hutch. Code, p. 200, § 5, makes tax deeds *primâ facie* evidence that the provisions of law were in all things complied with, and provide further that the defects relied on shall be " directly charged and proved."

It is nowhere in the bill " directly charged " who was the owner of the land at the commencement of the fiscal year of 1846. Nor is there any thing in the proof showing this fact. It is stated in the bill that James H. Shonter owned the land in 1846, and that he died in 1846; but whether before or after May first, the commencement of the fiscal year, is not stated. Even taking the bill for confessed, it could not be ascertained from it who was the real owner at the commencement of the fiscal year of 1846. It is, therefore, not " directly charged," as required by law.

It is stated that the heirs of Shonter were the owners at the time of the sale. This is immaterial, as the assessment relates to the commencement of the fiscal year. Besides, there is no proof on the subject of heirship, and there is a direct denial in the answer of the statements of the bill on this subject.

The complainant below was not entitled to the decree, upon the issue presented in the bill and answers, on the only point decided upon by the vice-chancellor — the form of the assessment. The allegation of the bill on this point is, that the land in question was the property of James H. Shonter in his lifetime, and of his heirs after his death; that he died in 1846, without averring at what time in that year. And that it was neither assessed in his name nor the name of his children. The answer denies all knowledge, and calls for proof.

In point of fact, no material issue whatever is presented in these pleadings. What if James H. Shonter were alive, and

the owner of the land from January to April, 1846; who was the owner on May 1st, 1846? for that is the material time. The bill does not state, and the proof is wholly silent on that point.   As to the importance of adhering to the matters in issue, see Gresley on Ev. p. 26, and note a.

It is, however, confidently insisted upon, that the law, as it stood in 1846, when the assessment was made, did not require that the assessor should insert the name of the owner in his list, in order to make the assessment valid.   The fifteenth section of the act of 1846 (see Hutch. Code, p. 187), was the only law then in existence prescribing the manner of assessing lands. It is very minute in its directions as to how the assessor shall proceed, but it nowhere requires the name of the owner to be specified.   In one place it requires that the assessor "shall enter in succession, all the subdivisions of each section," and in another part of the section it requires that he shall "enter on the assessment list, in regular numerical and consecutive order the sections, townships, and ranges," &c., but says nothing about owners' names.

The whole act shows that it was the intention of the legislature to look to the land alone for its taxes, without reference to ownership.   A special lien on the land is retained, in favor of the State.   Hutch. Code, p. 193, § 40.   The collector is allowed to distrain for taxes due on personal, but not on real property.   Hutch. Code, p. 189, § 25.

The form of the tax collector's deed given in that act (Hutch. Code, p. 190, § 31,) conclusively establishes this.   It shows that it was good without any owner's name whatever; requiring only that it should be sold "for the taxes due thereon." Or if an owner's name is inserted, the form makes it suffice if it is the "reputed owner."

This view is rendered more conclusive, from the fact that the forms given in the previous acts for deeds of this character, had required the owner's name to be inserted in the deed.   See Acts of 1843, p. 43, and Acts of 1844, p. 69.

The only mode pointed out, or contemplated by the act of 1822, section 9, for the assessor to acquire a knowledge of the taxable lands, was, to go to the owner of the lands and put

them on oath, requiring them to furnish a list, &c. See also section 8, R. C. p. 288. The act of 1846, however, section 17, (Hutch. Code, p. 188,) requires the assessor to go on the lands, and ascertain their value by personal inspection. And in making his list, the same act (section 15) requires him to commence in the north-east corner of each township, and to designate it by sections, townships, and ranges. There was a reason for requiring the names, in the apparent policy of the act of 1822, that did not exist in the different mode of assessing adopted in the act of 1846. When the reason of the law ceases, the law itself ceases.

Besides, the act of 1822, and all others authorizing assessors to assess lands in any manner, were repealed and abrogated by the act of 1842. Acts, p. 51, § 5. That act abolished the office of assessor, so far as lands were concerned, and made it the duty of certain commissioners to assess the lands, by dividing them into classes, and gave minute directions as to the manner, but gave no directions that the owner's name should be inserted. This law, being wholly repugnant to all laws conferring the duty of assessing land on assessors, remained in force until 1846, when the duty was again conferred on assessors, and the mode pointed out, in which the name of the owner was not required to be reported.

The fact that the name of the owner was not required to be reported in this last act, is evidence of the intention of the legislature to dispense with that formality for the future. 1 Pick. R. 45 ; 9 Ib. 103, 104.

Upon the subject of tax titles generally, the attention of the court is respectfully invited to the reasoning of the judge who delivered the opinion of the Supreme Court of the United States, in *Pillow* v. *Roberts*, 13 How. S. C. R. 476.

*A. M. Jackson*, on the same side.

To hold that the return of the owner's name is essential to the validity of the assessment, would be to give to the revenue laws a construction which would render them wholly impracticable. No assessor on earth, no matter how diligent and

careful, could possibly comply with such a requisition. As all muniments of title are not spread upon record, there exists no public source from which he could learn the ownership of all the lands in his county; and of course mere private inquiry would be futile in so wide a field. Again, the act does not require him to note the dates of his several assessments; and, therefore, if the ownership of the land is charged before the return of the assessment book to the probate clerk, it would be practically impossible to determine the true ownership at the time of the assessment. Such a construction should be given to the act as will effect, not defeat, its objects and policy.

No counsel for appellee.

Mr. Justice FISHER delivered the opinion of the court.

The object of the bill was to obtain a decree cancelling a deed made by the tax collector of Tippah county to the plaintiff in error, C. A. Green, on the 5th of April, 1847, for a quarter section of land, sold by the said collector on that day for the payment of the tax assessed thereon for the year 1846.

The complainant derives his title to the land through intermediate conveyances from the heirs of one James H. Shorter, who, it is alleged, was in his lifetime the owner of the land. It appears that Shorter died some time during the year 1846; when the land descended to his heirs. The bill alleges, among other things, "that the said tract of land belonged at the date of the alleged tax sale, to the minor heirs of the said James H. Shorter; and was not, and of right could not be, sold for taxes as their property; and further, that it was not assessed for the taxes of 1846 as their property, nor as the property of their said father, James H. Shorter, nor sold as the property of their father." The proof introduced in support of these allegations was made by the probate clerk of said county. He says, "I find the tract of land in controversy (north-west quarter section thirty-three, township six, range two east) assessed in the name of no one. It is valued at $1.25 per acre; total value, $200." He then annexes a copy from the assessment roll, showing the manner in which the assessment was made, as an exhibit to his deposition.

Two questions are made upon this allegation of the bill, and testimony offered to sustain it. The first is, that under the various provisions of the act of 1846, under which the assessment and sale were made, it was not necessary that the name of the owner of the land should appear in the assessment; and, Secondly. That there is no direct charge or averment showing who was the owner of the land on the first of May, 1846, the commencement of the fiscal year, and the date to which the assessment related, when made. The term "taxes," it is said, "includes all contributions imposed by the government upon individuals for the service of the State." The individual, and not his property, pays the tax. The property is resorted to for the purpose of ascertaining the amount of the tax with which the owner must be charged, and for the purpose of enforcing payment, when the owner shall be legally in default in paying at the time stipulated by law. No person is a taxpayer until he has been so declared by the proper officer. The assessment must be as certain in designating the person chargeable with the tax at the commencement of the fiscal year, as it must be in designating the amount of the charge, and the property to which reference is made for the purpose of ascertaining such amount. An assessment must be thus made in order to create a liability on the part of an individual to pay the tax. If no such assessment be made, no liability is created, and of course there can be no default in discharging that which has no existence. To authorize the collector to sell property to enforce the payment of taxes, there must be both a legal liability on the part of the owner to pay the tax, and a legal default in making the payment.

Having made this general statement of the law on this subject, as it exists upon principle, we will proceed to examine the argument of the plaintiffs' counsel, insisting that a different rule has been established by the act of 1846, under which the assessment and sale are alleged to have been made. Counsel appear to rely specially upon the provisions of the 15th section of the act referred to. That section requires the assessor to commence in the lowest number of the township in his county, and in the north-east corner of the township. He is then

required to enter in succession all the subdivisions of each section, as they may belong to different individuals, or if the whole of a section belong to one person, then the whole may be set down in the same entry upon the assessment list, unless it be necessary to divide it for the purpose of affixing a different value to each subdivision, for the purpose of increasing the amount of the tax. If this section have any direct or important bearing upon the question under consideration, it is certainly not in aid of the position assumed by counsel. It appears in direct terms to require the lands of individuals to be assessed in the name of the owner. But whether it does or not, it has not dispensed with the owner's name in making the assessment.

It is next said that a special lien is retained in favor of the State on the land, and that this confers upon the collector the right to sell, without regard to ownership. Counsel rely upon the 40th section of the act in support of this position. The section is in these words: " All taxes imposed by the provisions of this act, shall be preferred to all payments, executions, incumbrances, and liens of any description whatever, and shall be, from the first day of May in each and every year, a lien upon all the real estate of the person assessed, situate and being in the county in which the assessment is made." Hutch. Code, p. 193. This section, in the clearest manner, establishes the very position we took in the outset, that the *person* and not the *thing*, must be assessed, and charged with the payment of the tax. The lien is created and attaches to the real estate of the person assessed. Suppose there is no " person " assessed, is there any lien created? Here there was no person assessed; how is the lien contended for by counsel to invest the collector with authority to make the sale? The land is only a thing, and owes no duty to the government, and can be subjected to no disabilities for not contributing to its support. The government resorts to the land as a means of ascertaining the extent of the duties which a certain individual owes to the government in the shape of a tax, and to compel him, if necessary, to perform those duties. When the tax is legally imposed upon the individual, the lien is then created upon his land. If no tax be assessed against the owner, there can be none for the reasons

Green et al. *v.* Craft.

stated against his property; at least the legislature has not so declared.

But it is said that the form of the deed required to be made by the collector, as given in the 31st section of the act, proceeds upon the idea that the name of the owner might not only be omitted in making the assessment, but was not necessary even to be known to the collector, or noticed by him in making and consummating the sale. It may be true, that it is not necessary for the deed executed by the collector, to disclose the fact of ownership, or the name of the person in default in paying the tax, on account of which the land was sold. But this proves nothing as to requirements of the law in regard to other duties to be performed by other officers, or even by the same officer. The legislature merely desired to abbreviate the deed, and to render it as simple in form as possible. This was done to save expense, and to make the duty one which could be easily performed by the collector, without professional skill or aid.

Admitting, however, that if this section stood alone, it would tend to sustain the views of counsel, it must, nevertheless, be construed with reference to the whole law, as well that which precedes as that which follows. The 30th section requires the clerk of the probate court of each county to keep a " file book " in which he shall enter a list of all lands sold for taxes, together with the owner's name, the name of the purchaser, and the date of the sale. Where is the clerk to look but to the assessment list, or to the list furnished by the collector for the name of the owner of the land? Suppose that from the assessment list, and evidence supplied by the collector after making the sale, the clerk shall be unable to make out the file book and to put the name of the owner of the land sold thereon, as required by law, can the sale be treated as valid or legal? It must not only be authorized by law, but it must be legally made and legally consummated. This file book is the act of consummation required by the law. It is intended to furnish ready and easy information to the owner of the land, so that he may redeem it within the time limited by law. If from the assessment no such book could be made by the clerk as required by law, containing the name of the owner, the sale would be held void.

Many other points have been discussed by counsel with ability; but as the main points have been noticed and decided, it is not deemed necessary to pursue further the investigation.

Decree affirmed.