W. H. VASSER, Commissioner, etc. v. J. Z. GEORGE.

1. CONSTITUTIONAL LAW—LEVEE TAXES.—To pay debts contracted for levees on the Mississippi river, it is competent ·for the legislature to tax the district, which is the real debtor; and, in doing so, it may judge of the validity of each claim, and may even award payment upon abstract justice and equity, without reference to legal defenses which might avail against recovery in the courts; and may award the tax in favor of a single creditor or class of creditors.

2. SAME — LOCAL ASSESSMENTS.— Local assessments for local improvements are not such "taxes" as are referred to in § 20 of art. 12 of the state constitution, and therein required to be " equal," " uniform " and " according to value."

3. LEVEE TAXES.—The legislature may classify lands, as they are likely to be more or less benefited by levees, and tax them according to such classification.

4. PLACE OF SALE OF LANDS FOR LEVEE TAXES.—A law requiring sales to be made at the court-house door is mandatory, even in sales required by law to be advertised (Kock et al. v. Bridges, 45 Miss. 265); and, *a fortiori*, must be so in cases where, like the present, the sale is to be made on default of payment of the taxes at a day and place named in the law, "without further notice."

5. LAND SALES FOR LEVEE TAXES— OF THE QUANTITY TO BE SOLD. — Only the smallest subdivision of the tract belonging to an owner, that will suffice to pay the arrearage of taxes and costs, shall be sold. If not less than the whole tract will suffice, the whole shall be sold; and if the whole will not suffice, the whole shall be struck off to the levee board.

APPEAL from the chancery court of Leflore county. HOOKER, Chancellor.

The opinion states the case decided.

*Nugent & Yerger*, for appellant.

The power of taxation is inherent in the people. They may be circumscribed by the constitution, it is true; but if this is not done, except in isolated cases and for certain purposes, it exists in all its rigor. In so far as it is retained by the people, it can be exercised by the legislature at its discretion; and in respect to the levee laws, the power of taxation was retained by the people. Cooley Const. Lim. 499, 698.

If this position can be successfully assailed, there is another reason against the alleged unconstitutionality of the act of 1867. Was that act a contract between the state, or people of the district, and the holders of the

scrip of the general board? Had the state, or people of the district, a right to make such a contract? If these two propositions are affirmatively established, have such rights vested in the holders of the bonds issued under the act of 1867, as to prevent the application of the new constitutional provision to the law?

A contract is "an agreement, upon a sufficient consideration, to do or not to do a particular thing." Under the prohibitory section of the constitution of the United States heretofore referred to, the supreme court say, it is "an agreement in which a party undertakes to do, or nor to do, a particular thing." Sturges v. Crowninshield, 4 Wheat. 197. The constitution uses the general term "contract," without distinguishing between those which are executory and those which are executed, and must be construed to comprehend the latter as well as the former. Fletcher v. Peck, 6 Cranch, 129. "The provision of the constitution never has been understood to embrace other contracts than those which respect property of some object or value, and confers rights which may be asserted in a court of justice." Trustees of Dartmouth College v. Woodward, 4 Wheat. 629. Tested by these definitions, the act of 1867 is to all intents and purposes a contract. It was executory by its very nature. It was an agreement in which the state levied upon all the lands within the levee district, a specific tax annually for the payment of new bonds which might be delivered to the holders of the scrip, issued under the auspices of the general board of levee commissioners organized under the act of 1858.

These bonds could only be issued to those scrip holders who would consent to release six years accumulated interest—to surrender their scrip to be cancelled—relinquish the enforcement of the security in their favor provided by the act of 1858, and accept bonds of the liquidating board in five installments for the old debt, with a reduction of their interest to five per centum

per annum. Once accepted, the contract became completely executed. The old indebtedness of the general board of levee commissioners, secured by a tax on all the lands in the levee district, which amounted to about one dollar per acre, and which was a lien fixed beyond the power of the legislature to defeat or repeal, was surrendered and cancelled, and the scrip holders held in lieu of it, bonds issued under the new law and secured by a tax thereby levied, which was to continue until these bonds were paid. The creditors of the old board of levee commissioners were thereafter in no position to assert their rights in a court of justice, under the act of 1858, and enforce the lien created in their favor, and, of course, looked, and could look alone to the act of 1867, as it was passed by the legislature for the payment of their bonds. They had given a good and valuable consideration for all the benefits tendered to them under the new law, and the tax levied by that act is what they got in novation or exchange. The obligation of the contract, then, consisted in the continuous levy and collection of this tax, and it is this which no state has a right to impair, either by the adoption of a constitution, or by legislative enactment. The legislature was the party contracting, the scrip holders the party contracted with, and the old debt to be liquidated in the mode pointed out in the act of 1867, the subject-matter of the contract.

That the act of 1867 constituted a contract which the legislature had the power to make, is sustained by authority. Fletcher v. Peck, 6 Cranch, 129; Cooley Const. Lim. 284. And it was contract in its nature irrepealable. New Jersey v. Wilson, 7 Cranch, 165; Cooley Const. Lim. 281.

While it may be true, as a general abstract proposition, that the legislature cannot pass an irrepealable law, for the reason that if allowed to do so, the very constitution itself might be altered; still, there is a

modification of the principle by that provision of the constitution of the United States, which forbids the states from passing any laws impairing the obligation of contracts.

The obligation of the contract between the state or the people of the district, and the holders of the liquidating bonds, is the law which binds the state to perform its agreement. That law, the act of 1867, must govern and control the contract in every shape in which it is intended to bear upon it, whether it affects its validity, construction or discharge. It forms part of the contract and must travel with it wherever the parties to it may be found. It consists in the power and efficacy of the law which applies to and enforces performance of the contract. Ogden v. Saunders, 12 Wheat. 214. And while it is true that the states may pass laws professing to act only on the remedy, yet when such laws even amount to a denial or obstruction of the rights accruing under previous laws, they become obnoxious to the prohibition of the constitution. McCracken v. Haywood, 2 How. 608; Gentley's lessee v. Ewing, 3 ib. 707; Cooley's Limitations, ch. ix. But no question of the kind can properly arise in this case. Certainly it cannot be said that the act of 1867 has been repealed, or affected by the constitutional provision referred to, or that the rights which had fully vested under that law can at all be tampered with by the state. To make such an assertion, as the case now stands, is to say that the supreme law of the land, announced by the supreme court of the United States, is impotent to protect a contract fairly entered into and supported by a valuable consideration. Miss. Soc. of A. and S. v. Musgrove, 44 Miss. 835; 10 How. (U. S.) 190; 15 ib. 304; 1 Wall. (U. S.) 175; 2 How. 21; 3 ib. 295, 327.

Now, as to the construction of the law itself. While we are willing to admit that the current of authorities

requires a rigid construction of the revenue laws, so as to protect the citizen, we insist that the plain and manifest intention of the legislature, to be gathered from the laws themselves, ought to govern the court in the construction of the laws. 13 Johns. 498; 5 Wheat. 76–94. There have never been in any of the states laws of a character similar to that of our levee laws. Almost invariably, revenue laws deal of formality · in the assessment and levy of the tax and in its collection; and the power to sell is given only as a consequent upon a compliance with the conditions precedent required by law. Upon such statutes the courts have uniformly held that a failure of any one of the conditions will vitiate the sale. All the possible technical objections, which have defeated tax titles, have been obviated, and the only points which can be made against levee tax titles, are the payment of the tax or the unconstitutionality of the levee acts themselves. It is now too late to question the constitutionality of the levee laws. Alcorn v. Hamer, 38 Miss. 652; Cammack v. Williams, 27 ib. 209. There is left but one objection upon which to stand, and that is payment of the tax.

That the deed was not filed in the proper office does not impair the title. The failure only operates as a favor to the appellee. Blackwell on Tax Titles, 445. It is too late for the appellee to complain that the sale was made two hundred yards from the court-house, especially as he must have known and acquiesced in the sale. He is estopped from impeaching the sale; nor can the mode in which it was made avail him here.

From the allegations of the bill, it does not appear that more land was sold than was necessary, nor that the several parcels of land are not separately assessed. Such objections cannot, therefore, be well urged or maintained, especially when the tax, by law, is a lien upon the lands sold. Donahoe v. Richardson, 27 Mo. 420; Hayden v. Foster, 24 Miss. 631; Ives v. Jaynes,

7 Conn. 505; Crowell v. Goodwin, 3 Allen, 535; see also Smith & Montgomery v. Winston & Lawson, 2 How. (Miss.) 607; Doe, Ex'r v. Snyder, 3 ib. 66; Minor v. President, etc., Natchez, 4 S. & M. 602; Shelton v. Hamilton, 23 Miss. 496; Fraker v. Brown, 2 Blackf. 295; Isham v. Donner, 8 Conn. 282; Anderson v. Clark, 2 Swan. 156; McFee v. Harris, 25 Penn. St. 102; Jackson v. Caldwell, Cowen, 622; Goodyeare v. Ince, Cro. Jac. 246; Yelv. 179, S. C.; see 2 Hill, 629; 4 Danakr. 98; B. Mon. 263.

The mere failure of the tax collector to make the deed on the day of sale, and his deferring it until some time after, will not avoid the deed. Hill v. Kendall, 25 Vt. 528; Brooks v. Rooney, 11 Ga. 623.

*W. P. Harris,* for appellee,

Contended, 1. That the sale for the tax imposed by the act of February 2, 1867, was void, because it was a specific tax on all the land in the district, without reference to condition, quality or value, and, therefore, in conflict with the 20th section of article 12 of the constitution of 1869, which requires equality and uniformity of taxation, and that all property taxes shall be in proportion to value; and, being in conflict with the constitution, and not within any saving or exception therein, nor of a nature to be irrepealable, it was superseded or annulled. 2. That the sale was not made in accordance with act of 1867, or the acts of which that was amendatory, as to the place and manner of sale, nor was it made by a qualified officer. Citing, on the first proposition, Alcorn v. Hamer, 38 Miss. 652; Aberdeen v. Smith, 25 Miss. 458; 3 Kan. 199; 4 N. Y. 419; 2 Mich. 56; Gilman v. Sheboygan, 2 Black, 510; Von Hoffman v. Quincy, 4 Wall. 535; on the second, Blackwell on Tax Titles, 300, *et seq.;* ib. 100–105; French v. Edwards, 3 Wall. 506.

SIMRALL, J.:

J. Z. George exhibited his bill in chancery against W. H. Vasser, commissioner, upon whom was devolved the duties of the liquidating levee board, to vacate and cancel a deed made by the sheriff of Leflore county to the board, for lands bought in by them for the levee taxes, on the ground that the sale and deed did not divest the title of the complainant, but created a cloud upon it.

The bill assails the sale and conveyance upon several grounds. The case is brought up for our revision of the order of the chancellor overruling the defendant's demurrer thereto.

The arguments of counsel have been mainly addressed to the proposition that the law of 1867, imposing the tax, is invalid because it conflicts with the 20th section of the 12th article of the constitution.

The scheme of this statute is to create a liquidating board, charged with the duty of auditing all claims properly chargeable against the levee board created by the act of 1852 and its amendments; when found to be just, to take them up, by substituting new evidences of the debts; but this, upon the condition that the creditors will abate the arrearages of interest. In order to provide a fund for the payment of creditors who will accept the terms of the law, a specific tax of five cents, and three cents per acre, is imposed upon the lands within the district. The levee board, under the act of 2d December, 1858, was to continue for five years. By an amendment made 10th February, 1860, the time was extended two years. The war intervening in 1861 (August), the taxes under the act of 1858 and its amendments, were, by the legislature, suspended during the war, but to be collected for the unexpired seven years after the termination of the war. By subsequent act, in 1862, tax-payers were required to pay interest upon taxes unpaid during the period of suspension. It would seem that the levee board, being interrupted suddenly

by the war, in the work of constructing the levees, and also in the collection of the revenues for that object, were left involved in debt. These liabilities, with the accrued interest upon them in 1867, were a heavy burden upon the lands. In order to provide for their liquidation upon equitable terms, this board was created by the act of 1867. There is nothing compulsory in the law; those creditors who did not choose to embrace its offer, by rebate of interest, and taking new securities, were left to their rights and remedies under the original act of 1858, which were stringent and ample. The statute, then, instead of increasing the impositions on the tax-payers of the district, provided a mode of liquidation which, in all probability, reduced the debts of the levee board one-half, if its creditors generally conformed to the terms.

The law merely provided a mode of paying pre-existing debts, contracted on the faith of taxes pledged for their redemption. It was a cheap mode, too, apparently in the interest of tax-payers.

The question then is reduced to this: Is it competent for the legislature to tax the district, which was the real debtor for these liabilities, to raise the means of payment? The courts have not only responded in the affirmative, but have held that the legislature may judge of the validity and equity of the claims of creditors. Nor, it has been held, is it a valid objection that the creditor could not have recovered at law. The legislature may determine in favor of the creditor's claim, upon grounds of equity and justice, without regard to its validity in a court of law. The legislature may award the tax to pay a single creditor or a class of creditors. Central Park Extension, 19 Abbott, 56; Town of Guilford v. Supervisors of Chenango, 13 N. Y. 143; Potter's Dwarris on Statutes, 413.

But it is said that whilst the power to levy the assessment may exist, yet, in making the impositions,

the legislature is restrained by the constitution, and must make the apportionment as therein prescribed. The tax must be "uniform," and must be according to "value."

We are content to refer to our views on this subject, just delivered in Swope v. Bailey. In that case we reached the conclusion that local assessments for local improvements were not embraced in the 20th section of the 12th article, but were referable to the general power of taxation, which was supreme, unless restrained by the constitution of the United States, or of the state. The limitation upon the power in that section only applies and governs taxes levied for the usual ordinary and general purposes of the state, county and incorporated city or town, and does not include special assessments for local public objects for the purpose of ameliorating property and enhancing its value, and also contributing to the general convenience, health or welfare of the community. That, in apportioning such assessments, the legislature or local taxing body may levy them on the basis of special benefits received, because of the improvement made. And, further, may adopt that mode which, in its discretion, seems equitable and just, either by specific taxes or according to value, or in the instance of a very small locality, as a street or square in a city, either the area of the lots, the front measurement or value may be selected. So, too, in the levee district, composed of several counties and parts of counties, lands in the river counties, which are supposed to receive the largest benefit, may be assessed higher than those more remote. The legislature may classify the lands and tax accordingly.

Another objection is, that the sale was not made at the court-house door of the county. In Koch et al. v. Bridges et al., 45 Miss. 256, it was held that art. 277, Code of 1857, directing all sales by the sheriff, under execution or other process (except as therein provided),

to be made at the court-house door, was mandatory, and, therefore, he must sell lands at that place.    The statute of 1867, under which these lands were sold, refers to the act of 1858 as to the circumstances, time, place and mode.    The 6th section of the latter act, p. 36 (pamphlet), makes the tax a lien on the land, and directs the sheriff, upon default made in payment, on the day therein designated, without further notice, at the door of the court-house of the county where the lands are situated, to sell the land, or so much as may be necessary to pay the tax and cost of conveyance to the purchaser. The reasons for requiring a strict construction of this statute, as to the place of sale, is much more cogent than in sales by the sheriff under execution.    The sheriff must advertise his sale in advance.    This statute dispenses with notice, or rather it charges the public with notice of sale by its own terms.

In so far as the law may have publicity and be known, it informs the public that the lands of delinquent tax-payers will be sold, on a certain designated day in the year, and on no other, and at the place appointed.    The delinquent tax-payer is thus warned that his land will be sold, and the community, so far as advised of the terms of the law, are advised that all lands upon which taxes have not been paid will be sold on the particular day, and appointed place.    Manifestly, the object of naming day and place was that the people might then and there assemble, and have opportunity to bid, and thus insure a fair price for the least parcel of land that would produce the required sum of money.    The entire scheme of the law would be defeated, if the sheriff might make the sale either upon another day or at another place.

The statute notifies bidders that these sales will be made at the court-house door; naturally they would assemble there at the hours usual for such sales.    The sheriff, from the most improper motives, may put up

the lands for sale at some other place, although it may be in the county town, where only the few who had knowledge would be present, and gross injustice be done the land owner and the levee board. We are of opinion that the sheriff cannot, at his will or caprice, select another place. His statutory power of sale is at the door of the court-house. The sales must begin on the day named, but if not completed on that day, may be adjourned from day to day until completed. Sec. 6, Act 1858, p. 37, Pamphlet Laws.

It is further averred in the bill that the lands were offered for sale in lots of 40 acres *seriatim*, for the taxes and costs due on each several parcel, and when no bid was made therefor, each lot was struck off to the levee board, and that a sale was not made by offering a subdivision for the taxes due upon the entire section. The lands were in two several tracts. The injunction of the statute is, to sell the land or so much thereof as may be necessary, etc. There is no difficulty in reaching the legislative intent, to wit: to sell only so much as would suffice to relieve the whole from burden. If the complainant owned an entire section, so much, that is, the least quantity of it, known by subdivisions, that will bring the required sum, should be sold. The power to dispose of the whole is to be exerted only when less will not pay the tax and costs. We would suppose, therefore, if a 40 acre lot would not produce enough, then another 40 acres should be added, and so on, until the entire tract were offered.

In Hodge v. Wilson, 12 S. & M. 498; Boisgard v. Johnson, 23 Miss. 122, and Baskins v. Wilson, 24 ib. 431, the rules were made in that mode, and held to be valid. In Ray v. Murdock, 36 ib. 696, a sale of one-eithth of a section at a time, and of each eighth until enough was sold to pay the taxes, was held to be authorized by the statute. The section provides, " if no person shall bid the amount of taxes due on any tract of

land, such tract shall be struck off to the levee treasurer."
If, in offering the several subdivisions, none of them
receive a bidder that will pay the tax upon the whole,
does the statute intend that then the entire section
shall be offered? The sheriff, in this instance, pro-
ceeded with the sale, on the theory that each forty
acres of the section was subject to its own tax—and
must be sold for the ten cents assessed on each acre—
and not on the theory that the entire section, or half
section owned by the plaintiff was subject to the tax,
and that in raising the money by sale, only so much of
the whole tract should be sold as would suffice to pay
the taxes due upon the whole.

The rule prescribed in the Revised Code of 1857, art.
35, p. 79, for sale of land for taxes: first, an offer of
the smallest legal subdivision; if that does not produce
enough, he shall add another similar subdivision, and so
on until the requisite amount is produced. The levee
law of 1858, having been passed so soon after revision
of 1857, would strongly induce the inference that the
sales to be made under it must be conducted in the
mode prescribed in the code. It is only in the contin-
gency that the "tract," that is, the section or half sec-
tion owned by the tax-payer will not, when offered as a
whole, produce the amount of taxes and costs, does
the statute allow it to be struck off to the treasurer of
the board. This strongly implies that it must be
offered to other bidders as a whole. We can suppose
that bidders would decline to buy an eighth or quar-
ter of a section, who would give ten-fold the amount
of dues against it for the entire half. The law intends
to guard the property of the tax-payer, as far as prac-
ticable, from sacrifice. If it enforces a burden put
upon it by sale, it is studious to deprive him of no
more of it than is necessary to raise the needed sum.
Without pursuing further an examination of the several
grounds of the demurrer, or declaring an opinion on

any others than these already considered, we think the chancellor did not err in overruling the demurrer.

*Decree affirmed.*

Upon the argument of a motion for a re-argument in the cause by appellant,

*Nugent & Yerger,* for the motion,

Argued the case orally, and filed a written brief, submitting the following propositions:

The fourth section of the act of 2d December, 1858, provides " that each and every sheriff, charged under the direction of this act with the collection of the levee revenue, shall, on or before the first Monday in January, 1859, enter into bond, payable to the state of Mississippi, with two or more good and sufficient sureties, to be approved by the probate judge of the proper county, conditioned," etc. The same section fixes the penalty of the bond for Sunflower county at $40,000, and provides that the failure to give the bond by the time stipulated shall vacate the office of sheriff, and the vacancy shall be filled according to law. The tax levied by that act was ten cents per acre on each and every acre of land within the district.

The act of 1867 levies a tax of three cents per acre on the lands in Sunflower county, and the fourth section of that act provides for the execution of bonds annually, on or before the 1st day of January of each year next succeeding the levy of the tax, and declares that the act of 1858 and its amendments shall be made to apply and govern the execution of bonds as far as the same can be made to apply, and for the non-performance of the duties under the act, sheriffs shall be subject to like penalties as are provided in the act of 1858; but the act of 1867 does not declare that the office shall be vacated.

The bond, in this case, is in the penalty of $15,000,

and does not conform to the statute, but is amply suffi-
cient to cover the whole tax of the county, now less
than one-third what it was under the act of 1858.   The
act of the legislature, under which Leflore county was
carved out of Sunflower, expressly makes all the officers
of the county of Sunflower the officers of Leflore, and
extends their bonds to that county.   The only question
that can possibly arise in this view of the case is, had
the legislature the power to do this?

It was held in Cort v. Wells, 2 Vt. 318, that the failure
to give the proper bond would avoid the sale; but this
case was expressly overruled by Spear v. Ditty, 8 ib.
419; see also Ives v. Lynn, 7 Conn. 505, and Hale v.
Cushing, 2 Greenl. 218.

But the levee commissioner is the only party who can
can complain as to the sufficiency of the bond; if he be
satisfied, the object of the law is subserved.   All these
objections we have expressly cured by section 317 of
the Code of 1871, and the acts of the collector are
thereby made valid and binding as lawful official acts.
The acts of 1858 and 1867 both tax on the lands within
a district described by metes and bounds; and within
that district the lands of the appellee are located.   The
acts required the sales of delinquent lands to be made at
the court-house doors of the several counties, and applies
as well to counties in the district existing when the
tax was levied, as to those within the same district in
part enacted afterward.

It makes no difference that the deed was not filed on
the day of sale.   The commissioner's title depended on
the fact of the sale and purchase.   Hill v. Kendall, 25
Vt. 528.   And the failure to file the deeds simply ex-
tended the time for redemption, as allowed by law.
Donohoe v. Richardson, 21 Mo. 421.

2. Can the appellee have the levee tax-deed canceled
without paying or tendering his taxes?   By the express
provision of the act of 1867, from and after the sale of

lands for levee tax, all state and county taxes are suspended, and the commissioner is bound to collect them when the lands are sold by or redeemed from him. Act 1867, p. 246, § 13. So that the lien created by the act, in reference to the levee tax, is extended to all other taxes, and is made to secure them. By the very terms of the act itself, the appellee has the power at any time to pay his taxes and have the deed complained of canceled. He still has the privilege so to do; but, placing himself upon the irregularities complained of, he seeks to have the deed canceled and his lands exonerated from the payment of these "debts," due and chargeable upon the lands. If the sale has been irregular, the penalty of fifty per cent is not chargeable upon him. He still owes all the taxes and legal interest, and declines to pay them. He comes into a court of equity for relief, and in court should do, or offer to do, equity. He might even now pay his taxes, and the deed would be canceled at once. It is nothing but right and proper that he should pay his taxes; and he should offer to do equity before calling upon the court to do that which it was within his own power to do in the first instance. 1 Story Eq. Jur. 64, *et seq.*, and cases cited. If the sale of the lands for non-payment of the taxes be void, then the tax is still due by the appellee, and is a lien upon his lands. The attempt to foreclose that statutory lien was irregular and ineffectual, but the lien still exists. And yet there is no mode pointed out by statute in which the lien may be enforced after the day of sale, and the tax collected. If the appellee be allowed now to have the tax-deed canceled, and for nothing held, the anomaly would be presented of a valid lien, past due and unpaid, absolutely destroyed by the irregular conduct of the tax collector.

*W. P. Harris, contra.*

1. The question now is, whether the sheriff may law-

fully collect the levee tax without having given the bond required, or giving any security whatever that the money collected shall go into the treasury of the levee fund. It is submitted that he cannot; that even if the statute did not expressly prohibit such collection and declare the office vacant, which it does upon a failure to give the bond, it would result necessarily that he should not be allowed to collect from the citizen, money which, in the absence of the security required by the statute, he might never pay into the treasury. Cort v. Wells, 2 Vt. 318. And the bond must not only be given, but it must be such an one as the statute requires, not only on account of the interest of the tax-payers in having their money appropriated rightly, but because the power to sell is statutory, and a strict compliance with the statute an essential pre-requisite to the power of sale. Isaacs v. Wiley, 12 Vt. 674; see also Spear v. Ditty, 8 ib. 419; Hale v. Cushing, 2 Greenl. 218; Parker v. Overman, 18 How. (U. S.) 137.

2. The statute required the deed to be filed on the day of sale; if not so filed, the sale was void absolutely. Green v. Craft, 28 Miss. 70; see also Blackwell on Tax Titles, 300, *et seq.*

SIMRALL, J.:

This case having been submitted to us on the points made in the pleadings, and not embraced in the original opinion, we present these additional views:

The second section of the act of 1860 requires bond to be executed on the first Monday of January annually or biennialy, as the sheriff may elect. But no sheriff shall hold his office, or collect said tax, unless he shall execute the bond on or before the first Monday in January, etc., etc.

The fourth section of the act of 1867 requires bonds payable to the state to be executed by the sheriff, and adopts provisions of the statute of 1858, and the

amendments thereto, as to the execution of the bonds and the performance of their duties; and for non-performance of duties under this act, denounces all the pains prescribed in the former acts.

The effect of these statutes is to declare that if the sheriff fails to make a proper bond, his office shall be vacant, and " he shall not collect the tax." We construe the words of the law as prohibitory of collection, unless the bond has been executed. The legislature seems to have taken special caution not to permit the sheriff to receive the money from the tax-payers until he has given the requisite bond and security. If he was not competent to receive, clearly he could not take concise measures by a sale.

We should not be inclined to hold a sale for taxes made by a sheriff, under a proper bond, who might be unlawfully in office, to be void for that reason alone. We should apply the rule of the common law, affirmed by the statute, to a tax sale by such officer, as we would to any other official act done by him. If in office by color of right, his official doings as to the public, or persons having an interest in them, are valid. Kimball, Raymond & Co. v. Alcorn & Fisher, 45 Miss. 151. In some of the states it has been held that the rule ought not to have application to a tax sale; in other states the rule is different. The better reason is, not to except a tax sale of *de facto* sheriff out of the general rule, We only hold that if the sheriff does not execute a proper bond, he cannot collect, because the words of the statute so demand. In the absence of such a declaration, we would only inquire whether the sheriff was in office, exercising all its functions under a claim of title; and would uphold a tax sale made by him, upon the same principle and for the same reason that we would the service of a writ, or the levy of an execution. Although this bond does not meet the demands of the statute, and would not authorize the sheriff to collect the taxes,

yet it would seem to be valid as a common law obligation.

The 13th section of the act of 1867 directs the sheriff, if no person will bid the amount of taxes due on the land, to strike off the same to the "board constituted under the act, who become the purchasers thereof." By the eighth section of the act of 1871, in the above contingency, the lands may be struck off to the "levee commissioner." The statute allows two years for the redemption of land from the day of sale, and requires that the deed shall be filed in the probate, now chancery, clerk's office, and remain there unrecorded for that space of time. The clerk is authorized to receive the redemption money and cancel the deed. It would seem to us that the filing of the deed at the proper time is a part of the proceedings by which the sale is completed, and the title vests in the purchaser, and must be complied with. The clerk's office is the place where the tax debtor would naturally go to effect a redemption, by procuring a cancellation of the tax collector's deed. It is the more convenient place to the majority of tax-payers, since it is in the county where the lands are situated. These views, in addition to those embraced in the original opinion, cover all the material points made in the bill; all, at least, that we are prepared to express an opinion upon.