## R. V. Powers v. Ellen Penny et al.

1. Tax Title. *Sales list. Comparison. Certificate. Entries.*
   Under § 40 of the revenue statute (Acts 1878, p. 23), lists of land sold to the State, although without the entries and certificate by the chancery clerk, directed in § 47, of comparison with the assessment roll and advertised list, are admissible in evidence subject to the defence, permitted by § 42, that legal taxes were paid or tendered before sale.

2. Same. *Collector's bond. Curative statute. Constitutional law.*
   The statute (Acts 1873, p. 153) which makes deeds conclusive evidence of title five years after sales of land for levee taxes, is valid to the extent of curing the failure of a collector to give a bond required by statute alone and not by the Constitution.

Appeal from the Circuit Court of Washington County.
Hon. B. F. Trimble, Judge.

On the trial of this ejectment by the appellees against the appellant, it was agreed that the plaintiffs should recover, unless prevented by the defendant's tax titles.

*Shields & Skinner,* for the appellant.

1. The exclusion of the list of lands sold to the State, upon the ground of the clerk's failure to comply with the Revenue Statute of 1878, § 47, was clearly erroneous. Opposing counsel rely upon decisions cited by Blackwell on Tax Titles. But that author states that such an omission would not render an execution sale void, and, under our Constitution, execution and tax sales are upon the same footing. *Virden* v. *Bowers,* 55 Miss. 1. The requirement is manifestly directory, and designed to prevent the sale of land not assessed or advertised. In this case proof was offered that there was no error, but that in fact this list was correct. The title could not be affected by a clerical omission of a directory requirement, when the sole object thereof had been attained.

2. Under the decision in *Vasser* v. *George,* 47 Miss. 713, failure of the collector to give the bond required by the levee statutes would render his sales void. But by § 5, of the Act of 1873, no evidence would be received to impeach the deeds after five years from the day of sale. The statute is constitutional. The reason assigned by Cooley and Blackwell why such statutes are invalid unless the purchaser is in actual possession, is the absence of opportunity to try the validity of the title within the required time. Under our statute, however, the owner may test any tax title by a bill to remove clouds.

*Nugent & McWillie,* on the same side.

1. As there was a legal assessment and a legal sale, the title cannot be impeached upon the ground that the clerk failed to compare the list. Const. art. 12, § 8; *Gamble* v. *Witty,* 55 Miss. 26. The requirement is directory merely, and cannot affect the title previously vested. *Playter* v. *Cochran,* 37 Iowa, 258; Cooley on Taxation, 219. No irregularity of an officer in the performance of any duty subsequent to the sale is of consequence in view of a constitutional provision like ours. Blackwell on Tax Titles, 342, 344. The sales list, which could only be impeached in the manner pointed out by the statute, § 42 of the Revenue Law of 1878, should have been admitted, with the proof offered to sustain it. *Griffin* v. *Dogan,* 48 Miss. 11.

2. Power to enact such statutes as Acts 1873, p. 153, is

clear if the purchaser is in possession. Cooley on Taxation, 376, 377. When suit can be brought to test the title without such occupancy, the rule is the same. Cooley on Taxation, 378, 379. This statute applies only to cases in which the Levee Commissioners, who are public functionaries, hold the land, and necessarily involves the idea of a constructive possession. But, if not, a bill to remove clouds will lie. Blackwell on Tax Titles, 585, 587. Persons who rely upon the unconstitutionality of the statute must point out the part of the Constitution which it contravenes. *Mitchell* v. *Etter*, 22 Ark. 178. The decision in *Vasser* v. *George*, 47 Miss. 713, that a collector's failure to give bond makes his sale void, is erroneous. No words in the statutes declare that such shall be the result. The bond is required, but failure to execute it cannot render official acts void, although it might make the person a *de facto* officer, subject to removal at will.

*Percy & Yerger*, for the appellees.

1. If the effect of the Act of 1873, § 5, is to exclude proof of the tax collector's failure to give bond, which rendered the sale void (*Vasser* v. *George*, 47 Miss. 713), the statute is in excess of legislative power. The limitation of five years makes no difference in principle, and the sale in controversy took place two years before the statute. No statute can preclude the owner from showing that a tax sale of his land is void. *Virden* v. *Bowers*, 55 Miss. 1. In this instance, moreover, his rights may be concluded before he has actual notice that the tax title exists ; and unless the purchaser takes possession, suit may be barred before a right of action accrues. If this statute is to be sustained, it must be with the construction given to a similar one in Pennsylvania. Blackwell on Tax Titles, 584.

2. The sales list, under the Revenue Statute of 1878, was properly excluded. By § 47 of that act, the list, in order to be *prima facie* evidence, must be examined by the chancery clerk, and by him compared with the assessment roll and the advertised list. His certificate, with the marks required by law, showing that each piece of land was " assessed " and " advertised," not being upon this instrument, it had no more effect than any other statement made and certified by the collector to the effect that he had sold the land. Evidence upon

this branch of the title was incompetent after the sales list had been excluded.

CAMPBELL, J., delivered the opinion of the court.

The Circuit Court excluded the list of lands sold to the State by the tax collector, because the clerk of the Chancery Court had not complied with § 47 of "An Act in relation to Public Revenue," approved March 5, 1878. Laws of Mississippi, p. 49. That section required the chancery clerk, before recording the list of lands sold to the State, to compare it with the assessment roll and with the advertised list with which he was to be furnished by the collector, and if he found any land on the list sold which was not assessed and advertised, he was to strike it from the list, and record the list thus purged, and he was to write the word "*assessed*" opposite each piece found to have been assessed and the word "*advertised*" opposite each piece advertised; and the clerk was, after examining, comparing, and recording such lists, to certify that he had made the required examination, and that the lands sold had been assessed and advertised, &c.; and such entries and certificate were made *prima facie* evidence that the lands had been assessed and advertised according to law. Proof was proposed to be made in connection with the list offered, that the land sold and now in controversy was in fact duly assessed and advertised to be sold, when it was sold, but because the list did not show the words "*assessed*" and "*advertised*," written by the clerk opposite each parcel of land, and his certificate as required by the forty-seventh section above cited, the court refused to admit in evidence the list with or without the evidence of assessment and advertisement.

In this the court erred. Whatever may have been the object of enacting the forty-seventh section of the Revenue Act of 1878, it was not to annul the title acquired by the State by a sale of land for taxes due on it and unpaid. It does not declare that such result shall follow a failure by the clerk to comply with its requirement. Its sole object, as it seems to us, was to provide a safeguard against mistakes in selling land not assessed or not advertised. It was not intended to make the title acquired by the State dependent on

the performance of the duties devolved on the clerk, after the
sale was made and certified to him by the collector. The
section is *directory*, and does not prescribe the conditions on
which the title of land sold for taxes should pass. Section 40
of the same act declares that the collector shall strike off to
the State all land not purchased by individuals, and shall file
with the clerk separate lists of the lands sold to the State and
to individuals, which lists are to be recorded by the clerk,
and "said list of lands sold to the State shall be in lieu of
conveyances, and shall vest title in the State to all lands em-
braced in such list;" and § 42 of said act declares that the
prescribed "conveyance and list of lands sold to the State
. . . shall vest in the purchaser, or the State, as the case may
be, a perfect title to the land sold for taxes; and no such con-
veyance or list . . . shall be invalidated, nor shall any defence
be available against the title thus conveyed in any court of
this State, except by proof that the taxes for which said lands
were sold had been paid or tendered," &c. These sections
were designed to determine the effect of the list of lands sold
to the State and to prescribe what should invalidate the list;
and, if we treat § 47 as a modification of § 40, with respect to
the list, and as adding its requirements to the provisions of
§ 40, and read the latter as amended by the terms of the
former, there remains the specific declaration of § 42, that no
defence shall be available against the list except that the
taxes were paid or tendered before sale, &c.

The whole object of § 47 appearing to be to guard against a
sale of land for taxes, when it was not assessed or not adver-
tised, it would seem that proof of the due assessment and
advertisement of the land for sale should be held to obviate
all objection to a list which did not contain the entries and
certificates required to be made by the clerk. Such entries
are declared to be "*prima facie* evidence that the lands had
been assessed and advertised according to law," and their
absence would be fully supplied by proof of those facts. But,
as before stated, the title acquired by the State did not depend
on compliance by the clerk with § 47 of the act mentioned,
and the list of land sold to the State was admissible without
evidence of assessment or advertisement.

As to part of the land in controversy, the reliance of the defendant in the court below was on a conveyance of it by L. T. Webber, tax collector of Washington county in 1871, in pursuance of a sale for levee taxes due for 1870, under the act of Feb. 2, 1867. In order to invalidate this conveyance, the plaintiffs below offered evidence to show that Webber had not given bond for the collection of the levee tax as required by law. This evidence was objected to by the defendant, but it was admitted, and he excepted, and this presents the remaining question for our decision. The objection to this evidence was made specifically, " because under § 5 of the Amendatory Levee Act of 1873," such evidence is incompetent. That section is in these words : " § 5, Be it further enacted, that upon the expiration of five years from and after the sale of lands for the levee taxes under the provisions of said acts, no testimony or evidence to impeach or invalidate the deeds therefor to said commissioner or his predecessors in office shall be entertained by any court of law or equity in this State, except in cases of fraud," &c. Laws of 1873, p. 153. The sale by Webber was prior to the passage of this act, but it was clearly intended to apply to precedent as well as subsequent sales, and, as more than five years had expired after the passage of the act and before the evidence was offered to invalidate the deed, no question can arise as to this circumstance.

The only question is as to the validity of the section quoted. It is assailed as unconstitutional, in that it makes the deeds mentioned in it *conclusive* evidence of title in the grantee after five years from the sale, and it is claimed that the legislature had no right to declare this, and that this court so decided in *Virden* v. *Bowers*, 55 Miss. 1. There is nothing in the case mentioned to sustain such an assertion. In the opinion of Simrall, C. J., it was said, " it would be perhaps an unwarranted exercise of power in the legislature to declare the tax collector's deed conclusive to pass the title," and in the opinion of Chalmers, J., speaking of § 1700 of the Code of 1871, it is said, " standing by itself, without limitation, it would render perfect a title under a tax collector's deed executed in private, without either assessment or sale. Such a law the authorities cited in the principal opinion show

to be unconstitutional." . We adhere to the doctrine announced in that case, and are ready to reaffirm that the legislature cannot make a tax collector's deed *conclusive* evidence of title, so as to preclude evidence of the non-existence of the fundamental conditions imposed by the Constitution on the power to tax and sell for non-payment. There are certain constitutional prerequisites which the legislature cannot dispense with. There must be an assessment of the land, and a levy of taxes, and default in payment, before the power to sell can exist, and an act making a deed or list by the tax collector conclusive of these facts, and indisputable by evidence to controvert them, might justly be pronounced void. But that is not the case before us, for the evidence to invalidate the conveyance of Webber was not directed to the non-existence of any constitutional prerequisite to an exercise of power to sell for taxes. It was to show that Webber had not executed the bond required by law as the condition of his right to collect the levee taxes; and, assuming that this was sufficient to invalidate his conveyance, the precise question to be resolved is whether it is within the power of the legislature to make a conveyance by a tax collector *conclusive* evidence of the existence of those things resting for their requirement solely on legislative provisions, and not embraced in the requirement of the Constitution. In other words, may the legislature make the conveyance of the tax collector itself the indisputable evidence of title, proof against all assailment because of some irregularity or illegality consisting in a failure to observe some requirement not made by the Constitution, but imposed by the legislature? We do not hesitate to answer this in the affirmative, after the most careful examination and solemn consideration bestowed upon the question by the aid of all the learning the books afford. It is settled that the legislature may cure by subsequent legislation whatever it might have dispensed with beforehand. Many cases announce this doctrine, and it is true in the nature of things. Cooley's Const. Lim. p. 371 uses this language : " If the thing wanting, . . . and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dis-

pense with it by subsequent statute." And to this effect are all the authorities. An effort has been made in some instances to limit the principle as applied to legislation with respect to irregularities in tax sales, but we recognize no distinction between the power of the legislature to deal with tax sales and any other subject of legislation. In every case the inquiry is whether legislation has transcended the bounds prescribed by the Constitution. If it has not, it is not material that the object of it is to cure defects in tax titles. *Vaughan* v. *Swayzie*, 56 Miss. 704. Therefore, if the legislature might omit the requirement altogether, it may remit the consequence of a disregard of it or may forbid any inquiry into the fact of its observance or non-observance.

The requirement of a bond, before the collector should collect the taxes, was made by the legislature. It might have been dispensed with by the legislature, and it was competent for that body to declare that compliance or non-compliance should not be inquired into afterwards. It is true that this declaration was made by a subsequent act, but more than five years elapsed after it was passed in which questions of this kind could have been raised. But for the decision in *Vasser* v. *George*, 47 Miss. 713, we should have thought it a very manifest proposition that the failure of the collector to give the bond was not a ground on which to annul his sale. We would have so ruled, on the view that the failure to secure the amotion of the officer for not giving the bond required, and his possession and exercise of the functions of the office made his acts valid and binding as lawful official acts, in accordance with the unmistakable provision of the statute. Code 1857, p. 138, art. 104. But we place our decision distinctly on the ground that the 5th section of the Act of April 10, 1873, is valid to the extent of precluding any evidence to impeach or invalidate the conveyance of Webber, because of his non-observance of any statutory requirement not embraced in any of the constitutional requirements on the subject. We purposely avoid any reference to the question of the power of the legislature to pass statutes precluding *all inquiry*, after a prescribed period of time, into the validity of sales for taxes. What, if any, are the limits of such an exercise of authority

we leave to be announced when there may be an occasion
for it. Such announcement is not called for in this case.

*Judgment reversed and new trial granted.*