## THE PEOPLE v. SEYMOUR, et al.

IF a debt or duty be due from a citizen to the State or to a person, the Legislature may prescribe an adequate remedy for the enforcement of the duty or the payment of the debt, and this though *some* remedy already exists. It may be that the debt or duty must be of legal obligation; that is, a debt or duty recognized by law as binding, though no adequate remedy may have been given, or even though the proper means to give effect to it be not adopted.

The Legislature is restrained only by express limitations or restrictions in the Constitution.

A tax is a personal debt, or in the nature of a personal debt due from the property holder, and not a mere charge upon the property created by and depending upon the regularity of the proceedings given by statute; and the Legislature may prescribe a mode of correcting an informal assessment.

The Legislature has the power of taxation without restriction as to mode or limitation as to time; and if, from accident or oversight, or remissness on the part of the tax payer, the time for payment has passed, or the mere mode of charging him has not been followed by the officers, the Legislature may still compel him to pay.

Though a man can only be made to pay a tax according to law, that law may be made as well at one time as another, or by one series of acts as another, and as well after an informal assessment or no assessment, as before.

The Act of 1860, authorizing suit to be brought for the unpaid taxes of the years 1858 and 1859 in the city and county of Sacramento, and prohibiting the defendants from setting up in defense any informality in the levy or assessment of the tax, and making duly certified copies of the delinquent tax list, or the original or duplicate assessment rolls, evidence of the delinquency of the property assessed, of the amount of taxes due and unpaid, and that all the forms of law in relation to the levy and assessment have been complied with, is constitutional.

People *v.* Seymour.

Such a law, making the assessment *prima facie* proof, merely affects the remedy, and is not therefore liable to any constitutional objection.

Nor is the act unconstitutional because it compels the delinquent, if sued, to pay costs and a percentage by way of attorney's fees in addition to the tax assessed.

Nor is it any constitutional objection to the act that the delinquent tax list for 1859 was not properly published. The liability to pay the tax assessed preceded the publication of the delinquent list, and suit, under the Act of 1860, is based upon that liability.

The tax levied in Sacramento county for the wagon road from the eastern boundary line of said county through El Dorado county to Carson Valley, under the Act of 1858, and the tax for agricultual hall under the Act of 1859, are constitutional.

The averments in the complaint in this case, as to the levy and assessment, are sufficient, under the Act of 1860, to put upon defendant the burden of showing that she is not liable.   See facts.

APPEAL from the Sixth District.

Suit under the Act of April 3d, 1860, 139, to enforce the collection of the taxes asssessed against defendants in the years 1858 and 1859. The averments of the complaint are, that "defendants are indebted to plaintiffs in the sum of two hundred dollars and forty-one cents, which sum is due, owing and payable from defendants to plaintiffs for public revenue and taxes, as follows;" then follows a designation of the kind and amount of tax, as whether it be State, county or city, road, military, wagon road, agricultural hall, etc., and with the five per cent. and cost of advertising under the general revenue laws, and an averment that "said taxes were assessed against the following property, belonging to the defendants, in the city and county of Sacramento: Personal property assessed in 1858, valued at one hundred and forty dollars; personal property assessed in 1859, valued at three hundred dollars; improvements on real property assessed in 1858, valued at three hundred and forty dollars; improvements on real property assessed in 1859, valued at four hundred dollars; real estate assessed in 1858, valued at $2,200," with a description of the real estate, and an averment that it was assessed to defendants; that they have refused to pay, though requested so to do, and a prayer for judgment for the tax with the "costs, fees and charges provided by law."

Plaintiffs had judgment below; defendants appeal.

*P. L. Edwards,* for Appellants.

I.   Sections one and two of the Act of 1860, 139, are unconstitu-

tional and void.  The Legislature cannot exclude any constitutional defense to an action, nor pass any law having such retroactive force as to render valid and operative an irregular and void levy and assessment of taxes.  The judiciary are invested by the Constitution with the sole power and duty of determining what are constitutional defenses. Neither the legislative nor executive can interfere.  (*Thames Man. Co.* v. *Lathrop*, 7 Conn. 550 ; *Marsh* v. *Chestnut*, 14 Ill. 223 ; *Billings* v. *Detten*, 15 Id. 218 ; Sedg. on Stat. and Const. Construction, 189, *et seq.;* Id. 406, *et seq.;  Guy* v. *Hermance*, 5 Cal. 73 ; 4 Foster, 139 ; Blackwell Tax Titles, 738.)

The Legislature cannot create an obligation nor impose a penalty for an act which, when done, incurred no such liability; and the per centum allowed by this act to the District Attorney is such obligation or penalty. It is at least equivalent to an effort to make one man the debtor of another by the exercise of omnipotent legislation.  (Sedg. on Stat. and Const. Construction, 683 ; Id. 358 ; *Falconer & Higgins* v. *Campbell and others*, 2 McLean, 196 ; *Medford* v. *Learned*, 16 Mass. 215.)

The liability of the citizen to pay taxes can only arise from the regularity and validity of the proceedings in the levy, assessment, etc.  It can never arise from the default of others.  The Legislature can neither create a default in him, nor aid the void proceedings of the officials. (*Brown* v. *Veazie*, 25 Maine, 359 ; *Doughty* v. *Hope*, 1 Comstock, 79 ; 3 Denio, 594.)

II.  That portion of the tax sued for, which was levied for the wagon road through El Dorado county to Carson Valley, and for agricultural hall in Sacramento, is unconstitutional, because not within the powers of a municipal corporation, nor within the powers of a county. (Acts of 1858, 267 ; *Lowe* v. *Marysville*, 5 Cal. 214 ; Constitution, art. 2, sec. 31 ; Id. art. 4. sec. 31.)  The assessment of a tax for a road, when no road is laid out according to law, is void.  (*Philbrook* v. *Kennebeck*, 17 Me. 196.)

And here no road was constitutionally laid out or provided for. Besides, the authorities of the city and county had but a negative voice as to the grounds and pavilion.  (Acts of 1859, 20.)

All the substantial power was given by the act to others—was wrested from the constitutional officials, and placed in others wholly unrecognized by the Constitution.

The using of public money for the construction of roads in other counties and territories, and in the purchase of grounds and erection

of an agricultural pavilion, to be held in trust by the city and county
for the use of another corporation, or other persons or parties, separate
and distinct from the municipality, are unauthorized by the Constitution.

Among other provisions illustrative of this position, section four of
the Act of 1859, 21, is cited: "The title to the premises shall vest in
the Board of Supervisors, and be and remain under their direction and
control for the use of the Agricultural Society; and when not in use
by the said society, then to be used by other agricultural, horticultural,
mining, or mechanical societies." (*Bergen* v. *Clarkin,* 1 Halst. [N. J.]
352; *Bussey* v. *Gilmore,* 3 Greenlf. 191.)

III.    Both of the acts mentioned in the preceding point are uncon-
stitutional, for they were not enacted by the Legislature, but show upon
their own faces that they were not intended to be laws, unless made
such by a vote of the people.    Such power does not belong to the people,
nor can it be delegated to them by the Legislature.    (Acts of 1857,
272, secs. 1–2; Acts of 1859, 20, secs. 1–2.)

In neither case was there to be any law until after a majority of the
electors should have voted affirmatively, thus essaying to convert the
popular voice into the law-making power.    (Sedg. on Stat. and Const.
Construction, 149, 164–5, and note; *Thorne* v. *Crane,* 15 Barb. 112;
*Barto* v. *Himrod,* 4 Seld. 483; *Parker* v. *Commonwealth,* 6 Barr, 507.)

This doctrine was broadly recognized by this Court in the matter of
the State capitol; and although the views of this Court may have been
modified in some respects since that decision, yet such modification does
not affect this case, for here there was no law *in presenti* to go into opera-
tion upon the happening of a future event.    (*Blanding* v. *Burr,* 13 Cal.)

It is assumed that this road and pavilion are subjects of great public
interest, and are highly beneficial to the tax payers of the city and
county.    But of all this, who is to judge?    Under our Constitution the
tax payers are to decide for themselves, and each one has the same
power and right of judgment that all could have.

Again, the whole city and county government, as now organized, is
unconstitutional: First, because the city and county are made one
municipal corporation, having but one common Assessor and one com-
mon collector of taxes.    Whereas, section three of article two of the
Constitution requires these officers to be elected by the qualified elect-
ors of the district, county or town.    Second, because the Consolidation
Act contravenes section four of article two of the Constitution, which
requires a system of county and town governments as nearly uniform
as practicable.

IV.  The five per centum allowed by the general revenue law against delinquents is unconstitutional.  This per centum, when collected, is required to be divided equally between the county and State. For illustration, say that Tehama county imposes a tax of fifty cents for county purposes ; add the sixty cents State tax, and we have an aggregate of one hundred and ten cents, on which the five per centum is five and a half cents—one-half of which is required to be paid into the county, and the other half into the State treasury—and thus making the total State tax sixty-two and three-quarter cents; while Sacramento county imposes a local tax of two hundred and twenty-five cents, add the sixty cents State tax, and we have an aggregate of two hundred and eighty-five cents ; five per centum upon which, is fourteen and a quarter, to be distributed in the like manner, and thus we have a State tax of sixty-seven and one-eighth cents.  (Const. art. 2, sec. 13 ; Wood's Digest, 618, sec. 13.)

Uniformity neither does, nor can, coexist with such facts and results, either as to State or county taxes.  The least that could be asserted for the county, would be a *pro rata* dividend of the per centum on each tax, for the county gratuitously furnishes all the books, blanks, etc., and is allowed only a *pro rata* proportion of the fees of Sheriffs, Assessors and Auditors.  (Wood's Digest, 638, sec. 113.)

Thus, the uniformity of taxation exacted by the Constitution is again wanting, and that, both as to the State and county taxes.  The State tax should be uniform throughout the State, both in form and in effect.  Why should a proceeding to enforce the collection of taxes be applied in Sacramento, more rigorous than that applied in other counties ?  ( *The People* v. *Mayor of Brooklyn*, 6 Barb. 214.)

In addition to the foregoing, and in reference to the taxes of 1858, there is another fatal objection to this five per centum—it is a penalty for the non-payment of taxes which is barred after one year from the time at which it accrued.  (Wood's Digest, 47, sec. 17.)

After the third Monday in October, 1859, therefore, this five per centum on the tax for the year 1858 was barred by time, and it was not within the power of the Legislature to revive the liability, and the point is raised by the stipulation attached to the record.

V.  If the foregoing propositions be correct, it follows that the action, as now presented, cannot be maintained, for an assessment and sale of land for the taxes is not valid, unless the land was liable for all the taxes for which it is assessed and sold.  (*McQuilken* v. *Doe*, 8 Blackf.

518; *Stetson* v. *Kempton*, 13 Mass. 272; *Libby* v. *Burnham*, 15 Id. 144; *Ewell* v. *Shaw*, 1 Greenl. 339.)

And if the assessment, etc., are insufficient to make a valid sale, they cannot create a debt or liability *ex proprio vigore*, or with the aid of retrospective legislation. Every article should be legally subject to taxation and legally taxed, for every tax-payer is interested in the just payment of taxes by all others. All should contribute their just proportion of the expenses of the government, and no more. (*Adam* v. *Litchfield*, 10 Conn. 129; *Hardenburgh* v. *Kidd et als.* 10 Cal. 402.)

Acts of the Legislature cannot affect cases which have been already adjudicated—and here, according to the general revenue law, the levy, assessment, etc., if regular, were a judgment, and if irregular, they could neither be a judgment, nor create a debt or liability, even with the aid of subsequent legislation. (Wood's Digest, 623, art. 3,032; *Lambertson* v. *Hogan*, 2 Barr, 22.)

VI. The complaint is insufficient. The general count is not admissible, except in cases of contract. (1 Chitty's Pl. 340, *et seq.*) No special facts are averred as constituting the cause of action. No levy of the tax is averred, otherwise than by recital. Nor is there any averment as to when, where, or how the assessment was made; nor that any list was demanded of defendants, etc. (Pr. Act, sec. 39; 1 Chitty's Pl. 214, 372; Blackwell, Tax Titles, 738; Wood's Dig. 614, sec. 1; Id. 615, sec. 3; *Bratton* v. *Mitchell*, 1 Watts & Serg. 310; *Mason* v. *Rowe*, 5 Blackf. 98; Wood's Dig. 617, sec. 8; Id. art. 3,014, sec. 12, 3,015, sec. 13; Acts 1858, 271, sec. 9; 36 Maine, 433.)

The delinquent tax lists were never published as required by statute; it being contained in a supplement which was not circulated as extensively as the regular paper. (Blackwell on Tax Titles, 285; *Denis* v. *Simms*, 4 Bibb. 465.)

These taxes themselves are not a debt. They do not arise out of contract, express or implied, but are wholly *in invitum*. *A fortiori* the penalties here claimed do not arise out of contract. (Blackwell on Tax Titles, 205; *Pierce* v. *The City of Boston*, 3 Met. 520; *Thompson* v. *Gardner*, 10 John. 403; *Shaw* v. *Pickett*, 2 Vt. 482; *City of Camden* v. *Allen*, 2 Dutcher (N. J.) 398; *Mechanics and Traders Bank* v. *Debolt*, 1 Ohio, 591,) The power to impose a tax and sell property is a high prerogative. (*Beatty* v. *Knowles*, 4 Pet. 152.) And it is in derogation of the common law. (*Atkins* v. *Kinnan*, 20 Wend. 241; *Tharp* v. *Spier*, 4 Hill, 76.)

The cases of *Moore* v. *Patch* (12 Cal. 266) and *Cowell* v. *Doub*, (Id. 273) do not conflict with the foregoing points and authorities. In the first, the constitutional questions now presented were not raised, and in the latter they were especially waived by the counsel.

*E. B. Crocker*, also for Appellants.

A tax is not in any essential characteristic a debt—a voluntary liability, incurred by the tax payer. It is in its very nature, even when justly and lawfully levied, a burden imposed upon him without his consent, and often to raise money for objects directly opposed to his best interests. It is often imposed upon him by the votes of a majority who pay no taxes for objects to which he is opposed, as in this very case of the wagon road and agricultural hall taxes. (1 Bouv. Law Dic. 379; Blackwell on Tax Titles, 7, 205.)

If the Legislature should term it a debt, or a judgment, it would not make it so. A judgment is the decision or sentence of the law, given by a Court of Justice, or other competent tribunal, as the result of proceedings instituted therein for the redress of injury. (1 Bouv. Law Dic. 676.)

The Legislature cannot create a debt from one person to another, without consent of the party to be charged. (16 Mass. 86.) A tax cannot be recovered by an action of debt. (2 Dutcher, N. J. 358.)

Statutes imposing burdens, or taxes upon the citizen, must be strictly construed. (Blackwell on Tax Titles, 197–8.) It is only when taxes are legally assessed and levied that any burden or liability can be said to be imposed upon him, because these steps are all necessary to vest the right to collect the tax in the State. If, therefore, the Legislature says, that notwithstanding these acts have not been performed, and the right to collect the tax has not vested, the tax payer shall pay the amount, and may be sued in a new and independent action; to enforce this new claim, they are making a new contract without our consent.

Counsel says: the new law is beneficial to the defendant. But we are the best judges of what is for our interest.

The commissions provided for in the act, are really and substantially penalties imposed. The five per cent. imposed upon delinquent tax payers by the old revenue law, does not become part of the tax.

The Act of 1860 authorizes suit for the unpaid taxes, and it nowhere includes the percentage, advertising expenses, or anything but the simple taxes. The judgment in this case, not only includes the taxes

People *v.* Seymour.

proper, but this five per cent. under the old revenue law, and the expenses of advertising a sale which never took place, and it also includes the attorney's commission under the new law.   It is clear that the Act of 1860 does not authorize a recovery of these five per cent. and advertising items.   If for no other reason, the judgment in this case must be reversed.   On this point the counsel refers to 6 Ohio, 113, as sustaining his position; but an examination of that case will show that it has no bearing on the point.

The objections to the complaint are: 1. It does not aver that any demand was made of the taxes.   2. It does not aver that the taxes are due and unpaid, as required by the statute.   3. It says, tax for county purposes—wagon road and agricultural taxes.   No such kind of taxes are known to the law by any such names.   4. The five per cent. and advertising are not taxes within the meaning of the Act of 1860.   5. There is no averment that these taxes were ever duly assessed.   6. The statute only authorizes a judgment *in rem,* not *in personam.*

The only substantial averment in the complaint is, that defendant is indebted to plaintiff in a certain sum for public taxes.   The averment respecting the taxes is only started by way of inducement, or as a consideration for the alleged indebtedness, and not by way of direct and positive averment, as it should be.   The gravamen of the action is, that the defendant was the owner of certain property liable to taxation, describing it; that certain taxes were duly levied and assessed thereon, setting forth how; that those taxes are due and unpaid, and that the same have been specially demanded; then state the act under which the action is brought, and pray for judgment.

*C. Cole, District Attorney,* for Respondents.

*Tod Robinson and A. C. Monson,* of Counsel.

I.   Appellants have no equity; they stand in Court as infractors of the law, having failed to pay their taxes.   (*People* v. *Coleman,* 4 Cal. 48; Blackwell's Tax Titles, 40; *Parkham* v. *Decatur Co.* 9 Geo. 352.)

II.   The claim for taxes does not rest on the Act of 1860, nor even in the general revenue law.   It dates back as far as the Constitution. The obligation to pay taxes runs before all government.   (9 Geo. 352; Blackwell, 8.)   A proper tax is an absolute, indefeasible debt, from which there is no escape.   (Wood's Dig. art. 3032, sec. 32; Id. art. 3045.)   The Legislature have the power to cure any informalities in

People *v.* Seymour.

the assessment. (*Moore* v. *Patch*, 12 Cal. 270; *Crowell* v. *Doub*, Id. 274.

The Act of 1860 is remedial. (Sedg. Stat. and Const. L. 41–359; 1 Kent, 455; 2 Yerg. 125; 4 Wheat. 200, 207; 6 Ohio, 113; 10 Mo. 781; 12 Geo. 104; 15 Ill. 218; *Moore* v. *Patch*, 12 Cal; 1 Id. 232.)

III.    The act is not penal, in the strict sense. (*Ellis* v. *Whitman*, 10 Mo. 782; 1 Strange, 137; Cro. Jac. 413; 12 Geo. 104.) It is beneficial in this, that it allows the delinquent to pay his tax with ten per cent. additional, instead of fifty per cent., as under the general revenue law. The delinquent ought to pay the expense of collecting the tax, otherwise the prompt tax payer suffers by the laches of the more tardy. The costs are not a penalty. (Sedg. Const. Stat. 359–361; 13 Johns. 497; 19 Conn. 292; 4 Florida, 445.)

The manner of collecting taxes rests entirely with the Legislature. (*Burnett* v. *Sacramento*, 12 Cal. 84; *People* v. *Mayor of Brooklyn*, 4 Comst. 419; Blackwell on Taxes, *passim*; *Blanding* v. *Burr*, 13 Cal.)

IV.    As to the constitutionality of the wagon road and agricultural hall tax, see *Blanding* v. *Burr*, 13 Cal.; 24 Ala. 591.

V.    The failure to publish the "delinquent list" according to law, if it be a fact, amounts to nothing; it does not affect the debt, which arose before the publication was required. Besides, if there was no publication at all, the Legislature could cure. (*Moore* v. *Patch*, 12 Cal.)

Objection is made to the sufficiency of the complaint. The Act of April 3d, 1860, (sec. 2, 139) states what the complaint shall contain, and it has been observed with far greater strictness than can be required under section seventy-one of the Practice Act. Cases in point are found in 8 Ind. 358; 17 N. Y. (3 Smith) 235.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The Legislature, at its last session, passed an act to enforce the collection of the delinquent taxes in the city and county of Sacramento, for the years 1858 and 1859. (See Statutes of 1860, 169.) The second and third sections of this act are as follows:

"Section 2. The District Attorney of the city and county of Sacramento, is hereby authorized and directed to commence civil actions, in the name of the people of the State of California, in any of the Courts in said county, whether the defendant be a resident of the township or city in which the Court is located or not, to recover the unpaid taxes

People *v.* Seymour.

in said city and county for the fiscal years mentioned in the last section; and he shall designate in his complaint the amount of taxes due and unpaid for the State, city and county, and other purposes, separately, and shall state the kind and quantity of property assessed, both real and personal, and if real, describe the same; and the defendant shall not be allowed to set up or show any informality in the levy or assessment as a defense; such defendant being allowed only to plead, first, that the taxes have been paid before suit, or second, that he had not the property mentioned in the complaint at the time of the assessment, and has never been liable to pay said taxes; and no answer shall be filed in any such cases, unless the same be verified by oath.

"Section 3. The delinquent tax lists for said fiscal years, duly certified by the proper officers, shall be delivered to the District Attorney; and the said delinquent lists, or the original or duplicate assessment rolls, or a copy of any entry therein, duly certified, showing unpaid taxes against any person or property, shall be evidence in any Court to prove the delinquency, property assessed, the amount of taxes due and unpaid, and that all the forms of law in relation to the levy and assessment of such taxes have been complied with; and neither the delinquent tax lists nor the assessment rolls need be filed in any case."

Under this act this action was brought. The complaint alleges an indebtedness for taxes levied in the years named, and sets out the various items of taxation, the amounts, the property upon which levied, the obligation of payment, and the refusal. To this complaint defendant demurred, and the questions raised at the bar, and which have been fully argued on the briefs, are thus presented:

The defendant's counsel contends that the first two sections of the Act of 1860, are void, because unconstitutional, it not being within the power of the Legislature to exclude any constitutional defense to an action nor pass any law rendering valid a void or irregular levy and assessment of taxes. Perhaps it is a sufficient answer to this point to say that this objection, if good at all, has no application here: for it does not appear that the levy and assessment of *these taxes* was irregular or void. As, however, the point has been a good deal pressed in the argument, it may be well to meet it on broader and less technical grounds.

It may be very true, as argued, that the Legislature has no power to create an obligation upon a citizen to pay money which he does not owe; or, which is the same thing, to give such effect to a past act or

event not creating such obligation as to impose upon him a liability. But it is a different matter to say, that if a debt or duty be due from a citizen to the State or to a person, the Legislature may not prescribe an adequate remedy for the enforcement of the duty or the payment of the debt, and this though *some* remedy already exists. It may be true, that the debt or duty must be of legal obligation; by which we understand a debt or duty recognized by law as binding, though, to answer this definition, no adequate remedy may have been given, or even though the proper means to give effect to it be not adopted. It is difficult to see upon what reason or principle the power of the Legislature to do this can be denied. The Legislature, representing the mass of political powers, is only restrained by express limitations or restrictions in the Constitution. We see no limitations or restrictions on this subject. No obligation of a contract is invaded; property is not taken for public use without compensation; nor is it taken without due course of law. The citizen is only made to pay what he owes, and he is made to pay it in the ordinary mode adopted for the legal coercion of other debts. It is nothing to say that the new remedy is more effectual than the old; so is, or ought to be, every new remedy. This brings us to consider the real question in controversy, which is, whether a tax is a personal debt or in the nature of a personal debt due from the property holder, or is it a mere charge upon the property, created by, and depending upon the regularity of the proceedings given by the statute? It is argued that the relation of debtor and creditor does not exist between the property holder and the State, but that the law gives a qualified charge upon property, binding it only after and by force of certain precedent acts of the public officers. Many cases are cited from this Court and other Courts, holding tax sales invalid where the tax laws had not been strictly followed. But the principle of those decisions is wholly different from that here. The sales do not depend upon the mere existence of the debt or the correctness of the assessment, or upon the question whether the property or person of the assessed were subject to taxation; but they depend upon the following of the steps the law itself has prescribed for their government; in other words, the purchaser, tracing his title through the law, must show a compliance with its provisions. Authorities are cited from other States for the purpose of showing that this tax is a mere charge on property, creating no personal obligation; but, as the cases rest on statutes which are different in different States, they throw but little light on the construction of our

own legislation.   To our own revenue laws we must look for the solution of this question.

By statute of April 9th, 1857, (Wood's Dig. 614) "All property of every kind, shall be subject to taxation,"—(with certain exceptions). By section three, the County Assessor shall ascertain the names of all persons owning property, and he shall list or assess the same *to the person* or persons owning, etc.   By section four, it is made the duty of the Assessor to prepare a tax list or assessment, containing, among other things, the names, etc., to whom the property is assessed.   By section thirty-two, "Every tax levied under the provisions or authority of this act, is made a judgment against the person, and a lien against the property assessed; which lien shall attach, and judgment date as of the first Monday in March in each year, and shall have the full force and effect of an execution against all property of the delinquent, which judgment shall not be satisfied, or the lien be removed, until the taxes are all paid, or the property has absolutely vested in a purchaser under a sale for taxes."   These provisions seem to be in accordance with the constitutional injunctions, which were designed to secure uniformity and equality in taxation.   It is thus seen, that the tax upon property is as well a personal charge as a charge upon the property.   The statute, it is true, requires an assessment, but it may be well doubted if this be the foundation of the duty, or anything more than a means of enforcing or collecting the tax.   This, or some other proceeding may be necessary to fix the amount of the tax; but the property having been declared subject to the tax, and the owners liable to pay it, it is not seen why the Legislature may not prescribe the mode of correcting an informal assessment, as well as prescribe the form of it in the first instance.   The exercise of the taxing power is a sovereign attribute.   The mode of ascertainment and collection of the tax is a matter of legislative discretion.   What the Legislature may do, as a general thing, it may do in its own way, and at its own time.   There is a general power to tax; there is no restriction of mode, nor is there any limitation of time by the organic law.   Unless restrained by the Constitution, the Legislature have plenary power over the subject.   Upon what principle, then, can it be contended that the Legislature cannot as well make a man pay his taxes, when, from accident or oversight, or his own remissness, the time for payment has passed, or the mere mode of charging him has not been followed, as they could in the first instance direct the tax?   Why should he be discharged, or the power of the Government over him or

his property be remitted from accident or mistake? Justice does not require his release, and we see nothing in technical law which authorizes it. It is not less a tax, nor a tax due by him, because of this circumstance from which he claims exemption. Though he can only be held to pay according to law, we know of no reason or rule which disables the Legislature from making that law as well at one time as another, or by one series of acts as another, and as well after an informal assessment, or no assessment, as before.

The question is, as to the mere power of the enforcement of a duty; and the exercise of the power may be made at any time, so long as the duty remains.

We think it is wholly immaterial to consider whether these taxes be debts in the sense of money obligations existing by contract. The Government has the same right to enforce a duty as a debt, and may enforce it in the same way; the circumstantial difference between the two classes of obligations is nothing, so far as the power of the Government is concerned, between a man voluntarily binding himself to pay money to the Government, and the Government binding him to do so, when he has no option but to obey. (See *Moore* v. *Patch*, 12 Cal. 270; *Crowell* v. *Doub*, 12 Cal. 274; *Kelsey* v. *Abbott*, 13 Cal.; 28 Miss. 70.) If the assessment be necessary to create the obligation, the complaint avers that the assessment was made. What informality, if any, exists in this assessment, or in the proceedings under it, we are not advised. The assessment list must ascertain the sums due for taxes, as we see no other mode of arriving at them, and the assessment must have been made substantially in pursuance of the law; it must have been made by the proper officer, and contain the names, description, amount, etc. (See sec. 4, p. 615.) But it is not necessary to say more than that the Legislature has a right to prescribe the rules of evidence; and, though this principle may have its limitations, yet we think the Legislature authorized to give the documents and official papers of public officers the effect of *prima facie* proof of the facts recited in them, especially when the rule is made to apply only to future cases. This provision, making the assessment *prima facie* proof, merely touches the remedy, and, therefore, is not obnoxious to any constitutional objection.

3. Nor do we see why the claim for damages is not authorized. These are designed as a penalty to cover costs and expenses of prosecuting suits, and would seem to be embraced by the general power of the Legislature to impose terms, or conditions, or costs in certain cases. If

treble costs had been given in this class of cases, no questions could have been made of the power of the Legislature to make the requisition. We see no difference between this and the damages prescribed. The same observation applies to attorney's fees.

4. The question of the legality of the tax for the wagon road and for the agricultural hall has been decided in several cases. (*Pattison* v. *Supervisors*, 13 Cal.; *Blanding* v. *Burr*, Id.)

5. There is nothing in the point, as to the publication of the delinquent list. The liability of the defendant to pay her taxes preceded the publication of the delinquent list, and upon that liability she is sued.

6. We think the technical points on the complaint not well taken. The averments of the levy and assessment of the tax are sufficient, under the Act of 1860, leaving to the defense to show that the defendant was not liable. Such seems to be the evident design of the act.

Judgment affirmed.

COPE, J.—I concur in the judgment.