STATE *ex rel.* WM. L. MOOSE, ATTORNEY GENERAL *v.* KANSAS CITY & MEMPHIS RAILWAY & BRIDGE COMPANY.

Opinion delivered November 16, 1914.

1. STATUTE—CONSTRUCTION—PROSPECTIVE OPERATION.—All statutes are to be construed as having only a prospective operation, unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared, or is necessarily implied from the language used.

2. TAXATION—BACK TAXES—COLLECTION.—Kirby's Digest, § § 7204-7213, as amended by Acts of 1911, p. 324, and Acts of 1913, p. 724; *held,* to afford a remedy for the collection of back taxes, and that it was retrospective in its nature, independent of any express declaration therein, to that effect.

3. STATUTES—AMENDMENTS—CONSTRUCTION.—Amendments are to be construed together with the original act to which they relate, as constituting one law.

4. TAXATION—BACK TAXES—COLLECTION—REMEDY.—The object of Act 169, Acts 1913, p. 724, amending Act 354, Acts 1911, p. 324, was to give a complete remedy for the recovery of back taxes due by a corporation upon any property then in the State, which belonged to any corporation at the time such taxes should have been properly assessed and paid.

5. TAXATION—BACK TAXES—COLLECTION.—Act 169, p. 724, Acts 1913, amending Act 354, p. 324, Acts 1911, providing for the collection of back taxes due by a corporation, has the effect of bringing forward the unamended sections of the latter act, and making these a part of a complete act which operates retrospectively from the date of the amended act, the same as if the said amended act had been repealed and a new, independent, and complete act had been passed.

6.  TAXATION—BACK TAXES—COLLECTION—DUE PROCESS.—Kirby's Digest, § § 7204-7213, as amended by Act 354, p. 324, Acts 1911 and Act 169, p. 724, Acts 1913, providing for the collection of back taxes, due on property belonging to corporations; *held,* to be a proper exercise to the State's right of taxation, and not to be in violation of the Federal Constitution, as denying to corporations equal protection of the laws, or depriving them of property without due process of law.

7.  TAXATION—ERRONEOUS ASSESSMENT—COLLECTION OF BACK TAXES.— Where erroneous assessments of property for taxation have been made, the Legislature may, by retrospective legislation provide a remedy for the collection of the same.

8.  TAXATION—ACTS OF ASSESSING OFFICERS—FINALITY.—The Legislature has the power to provide for correcting the acts of assessing boards and officers, for fraud or errors of judgment.

9.  TAXATION—BACK TAXES.—The owner of property which has for any reason escaped payment of a part of its just share of taxation, can not have a vested right to immunity from payment of the balance due.

10.  TAXATION—BACK TAXES—LEGISLATION AUTHORITY.—The fact that no statutory remedy exists for the correction of an erroneous assessment at the time it is made, does not preclude the Legislature from granting a remedy at a subsequent time.

Appeal from Crittenden Chancery Court; *John M. Rose,* Special Chancellor; reversed.

STATEMENT BY THE COURT.

March 1, 1887, the Arkansas General Assembly passed an act to provide for the collection of overdue taxes from corporations doing business in the State. Acts of 1887, p. 33; Kirby's Digest, § § 7204 to 7213, inclusive. It was amended by an act of May 30, 1911, as to the compensation to be paid to counsel employed to assist the Attorney General. Acts of 1911, p. 324. The title of that act was ''An act to amend section 7204 of Kirby's Digest of the Statutes of Arkansas, which provides for the collection of overdue taxes form corporations.'' It divided the original section into sections 1 and 2, the latter section containing the amendment. Section 3 repealed conflicting laws and put the act into effect from the time of its passage. The first section of the act, section 7204, was further amended by the act of March 12, 1913, which is

entitled "An act to amend section 1 of Act No. 354 of the Acts of 1911, approved May 30, 1911." Section 2 repealed all laws in conflict and added an emergency clause. Acts of 1913, p. 724. Section 7204, as amended, with the words added by the amendment in italics and those omitted from the original section in brackets, reads as follows:

"Where the Attorney General is satisfied from his own investigation, or it is made to appear to him by the statement in writing of any reputable taxpayer of the State, that in consequence of the failure from any cause to assess and levy taxes, or because of any pretended assessment and levy of taxes upon any basis of valuation other than the true value in money of any property hereinafter mentioned *or because of any inadequate or insufficient valuation or assessment of such property, or undervaluation thereof,* or from any other cause, that there are overdue and unpaid taxes owing to the State, or any county or municipal corporation, or road district, or school district, by any corporation, (or) upon any property now in this State which belonged to any corporation at the time such taxes should have been properly assessed and paid, that it shall become his duty to at once institute a suit or suits in chancery in the name of the State of Arkansas, for the collection of the same in any county in which the corporation owing such taxes may be found, or in any county in which any part of such property as may have escaped the payment in whole or in part of the taxes as aforesaid may be situated, in which suit or suits the corporation owing such taxes, or any corporation (or person) claiming an interest in any such property as may have escaped taxation as aforesaid, shall be made a party defendant, and the Governor is authorized to employ any attorneys that may be necessary to assist the Attorney General in such suits; *provided, that this act shall be construed as retrospective as well as prospective in operation.*"

Section 7205 provides for constructive service where actual service can not be had.

Section 7206 provides that the complaint shall describe as nearly as may be the property on which said taxes have accrued, and that the State, counties, school districts and municipal corporations aforesaid shall have a lien on said property from the passage of this act, for the payment of said overdue taxes, to be enforced by suit as herein provided.

Section 7207 provides that upon final hearing the court shall determine the amount of said State, county, school district and municipal taxes, and the penalty and costs due on the same, if any, and to whom said taxes are payable, and shall decree payment thereof accordingly; that when for any reason any of the property has not been assessed, the court shall refer the matter of such assessment to the county assessor who shall make his assessment for the past year or years mentioned in the order of reference, and return the same into court; and provides for a like reference of the assessment of delinquent railroad property to the proper officer or commissioners who shall report their assessment to the court, and that the court shall have power to hear testimony and to change said assessment as justice and equity may require.

Section 7208 provides for the rendition of a decree declaring and enforcing the lien for such taxes by a sale of the property; and in case of a railroad, the lien shall be decreed against the whole line of the road, including the main line and sidetracks, switches, turnouts, improvements, stations, structures, rights-of-way, embankments, tunnels, cuts, ties, trestles, bridges, and all lands in the State belonging to such corporations; and that the taxes shall be paid within three months after rendition of decree, with a penalty of ten per cent per annum after default.

Section 7209 provides that the sale shall be made in the same manner as other sales in foreclosure of liens in chancery, and with like effect, and for a distribution of the funds owing the State, counties, etc., entitled thereto.

Section 7210 gives all parties interested in the property the right to redeem within one year from date of sale,

by paying into court the amount of the decree and penalty on same, at the rate of 25 per cent per annum.

Section 7211 provides for the execution of deed to purchaser if no redemption is made.

Section 7212 gives precedence to the suits and limits time for taking appeal to thirty days from date of the decree.

Section 7213 provides that the decree in the suit shall be for all taxes due the State, and to the counties, cities and other political subdivisions of the State, and that it shall not be confined to the taxes due in the county in which the suit is brought.

Prior to the passage of the act of 1913, the State, on the relation of the Attorney General, filed a suit in the chancery court of Crittenden County, against the Kansas City & Memphis Railway & Bridge Company to collect back taxes on its railroad and bridge property, alleging that it had not been adequately assessed for the years 1893 to 1910, inclusive.

A general demurrer to the complaint was sustained and the decree dismissing the action was affirmed by this court. *State ex rel. Atty. Genl. v. K. C. & M. R. & B. Co.,* 106 Ark. 248.

It was held that the statute only gave the State a remedy by way of review by the courts where the assessing boards or officers had proceeded on the wrong basis of valuation, in omitting some property or element of value, or in adopting the wrong basis of estimating value, and that it did not authorize a review whereby a mistake had been made in assessing value of property too low. The amendatory act of 1913 was passed shortly afterward, and the present suit was filed in the same chancery court against the same defendant, to recover the back taxes on the same property for the years 1893 to 1912, inclusive.

The complaint alleges that the defendant is a railroad corporation organized under the laws of Arkansas; that in 1892 it built a railroad and a bridge across the Mississippi River opposite Memphis, Tennessee; that one-half

of said property is situated in Crittenden County, Arkansas, in School District No. 8, and Road District No. 1; that the defendant now owns and has always owned said property in fee, and that it was subject to taxation in said county; that it was assessed in each of said years for taxation at less than one-sixth of its actual and true value; that the assessments upon which the defendant has paid taxes for each of said years has been upon an inadequate and insufficient valuation and upon an undervaluation thereof, and that there were overdue taxes owing by the defendant on said property of not less than $800,000. Prayer for decree ascertaining the true amount of taxes which should have been paid and for the recovery thereof.

A general demurrer to the complaint was sustained and the cause dismissed. Plaintiff appealed.

*Wm. L. Moose,* Attorney General, and *A. B. Shafer* and *C. H. Trimble,* Special Counsel, for appellant.

*Rose, Hemingway, Cantrell, Loughborough & Miles, W. J. Orr, Moore, Smith & Moore* and *W. F. Evans,* for appellee.

McGILL, Special J., (after stating the facts). The first contention in support of the demurrer to the complaint is that the act of 1913 should be so construed as to limit its retrospective effect to that feature of the amendment which restricts the remedy to property owned by a corporation at the time of the passage of the amendatory act, and, if not so limited, so as to confine its retrospective operation to the period between the passage of the act of 1911 and the act of 1913.

(1)   The established rule is that all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. 36 Cyc. 1203; *Fayetteville B. & L. Assn.* v. *Bowlin,* 63 Ark. 573; *Beavers* v. *Myar,* 68 Ark. 333; *Ely* v. *Holton,* 15 N. Y. 595; *N. Y. & O. M. R. R. Co.* v. *VanHorn,* 57 N. Y. 473; *Chew Heong* v.

*United States,* 112 U. S. 536; *Shreveport v. Cole,* 129 U. S. 36; *City Ry. Co.* v. *Citizens St. R. R. Co.,* 166 U. S. 557.

In the act of 1913 the purpose and intention of the Legislature that it should have a retrospective effect is expressly declared. But, because it does not specify that it is to apply to each separate provision, and on the assumption that it will otherwise impose additional burdens on the public and operate harshly and unjustly, it is insisted that it should be construed in the most limited sense of which the language used, in connection with the subject-matter and object of the statute, is susceptible.

The fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. 36 Cyc. 1106; *Brown v. Nelms,* 86 Ark. 368, 385.

The strict rule of construction contended for does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. These should receive a more liberal construction, and should be given a retrospective effect whenever such seems to have been the intention of the Legislature. 36 Cyc. 1209.

(2) Taking into consideration the origin and history of the legislation on the subject, which is given in the opinion of the court in the suit instituted before the amendment of 1913, and the language of the different provisions, and particularly that provision which restricts the operation of the act to property "now in this State," that is, within the jurisdiction of the courts of the State at the time, we are of the opinion that the statute was intended to afford a remedy for the collection of back taxes; and that it looks backward, rather than forward; and that it is necessarily according to its language, retrospective, independently of any express declaration therein to that effect. To apply the rules of construction contended for would, in this case, defeat the plain purpose and intention of the Legislature. If it had been intended to restrict the retrospective operation of the act to the particular provision contended for, it would have been easy to use "di-

rect and appropriate language for the purpose." If the entire act is retrospective, there is no reason to believe that the Legislature intended to limit the right to recover on the ground of undervaluation to the single year of 1912, and it should not be so construed unless the fact that the act of 1913 purports in its title and enacting clause to be an amendment to section 1 of the act of 1911, makes it necessary that such construction should be given. Looking at the substance of the two acts, it appears that section 1 of the act of 1911 is a literal copy of section 7204 of Kirby's Digest, except the last five lines of section 7204 relating to the compensation to be paid to attorneys employed to assist the Attorney General. That part of it is embodied in section 2 of the act of 1911, and amended, as to the amount of such compensation. The act of 1913 only amends that portion of the original section 7204 which is included in section 1 of the act of 1911, and makes the first and only change in that part of the original act of 1887 which confers upon the Attorney General the right to sue for the recovery of back taxes.

(3)    Amendments are to be construed together with the original act to which they relate as constituting one law. The old law should be considered, the evils arising under it, and the remedy provided by the amendment, and that construction of the amended act should be adopted which will best repress the evils and advance the remedy. An amended act is ordinarily to be construed as if the original statute had been repealed and a new and independent act in the amended form had been adopted in its stead. *Mondschein* v. *State,* 55 Ark. 389; 36 Cyc. 1164, 1165; *Cortesy* v. *Territory* (N. M.), 32 Pac. 504; *Callahan* v. *Jennings* (Col.), 27 Pac. 1055; *Dimpfel* v. *Beam* (Col.), 91 Pac. 1107.

(4)    The object of the amendatory act of 1913 was to give a complete remedy for the recovery of back taxes due by a corporation upon any property then in the State, which belonged to any corporation at the time such taxes should have been properly assessed and paid. It takes away the right conferred by the orignal act to proceed

against property where the title had passed to an individual, although it had been owned by a corporation when the assessment was made and the taxes were payable, but extends the remedy to cases of inadequate or insufficient valuations or assessments or undervaluations of property, while under the original act the remedy was confined to cases of an omission of some property, or element of value, or where the wrong basis of valuation has been adopted.

In order to make the remedy complete it was not necessary to bring forward and re-enact the other sections of the original act. They relate only to the method of procedure, while the portion which was amended declares the right to maintain the suit.

(5) The amendment of the original act has the effect of bringing forward the unamended sections and making them a part of a complete act which operates retrospectively from the date of the last amendment, the same as if all prior acts had been repealed and a new and independent and complete act had been passed at that date.

See authorities above cited, and also, *Com. Sch. Dist. v. Oak Grove Sp. Sch. Dist.*, 102 Ark. 411.

Whether the statute can be given a prospective operation so as to give it a continuing effect, is a question not presented by the facts of this case, and need not be decided. The retrospective effect of the act is separable from its prospective effect.

(6) The second contention in support of the demurrer is that if the statute is retrospective, it violates the provisions of the State Constitution requiring equality and uniformity in taxation, and the first section of the Fourteenth Amendment to the Constitution of the United States, prohibiting a State from denying to any person the equal protection of the laws.

The contention is that the selection by statute of the property of corporations is an arbitrary classification based solely on ownership, and not upon any inherent difference in the character of the property; that it destroys

the uniformity and equality in taxation required by the State Constitution, and therefore results in a withdrawal from corporate owners of property of the equal protection of the laws, in violation of the Fourteenth Amendment. It seems to be conceded by the learned counsel for the appellee that it would not have been a violation of the State Constitution if the statute had required *all* property that had been undervalued to be assessed at its true value.

The object of the assessment is to ascertain and fix the value of property for taxation. The value is to be ascertained in such manner as the General Assembly may direct, provided, that such values shall be equal and uniform throughout the State, and that no one species of property shall be taxed higher than another species of property of equal value. Art. 16, section 5, Constitution.

It has been settled by repeated decisions that the State is allowed a wide discretion in the matter of classifying property for the purpose of taxation. No question is raised as to the validity of the laws that have been passed on that subject, under which the original assessments involved in the present case were made, but it is assumed that the validity of the statute now in issue must be tested by the same rules and principles that are applied to original statutes for the classification of property for taxation.

The statute providing for the separate classification of certain property of railroad corporations and its assessment by a State Board of Commissioners, while the other property of such corporations and the property of individuals are assessed by the county assessor, has been held not to be in conflict with the Constitution of the State. *L. R. & F. S. Ry.* v. *Worthen,* 46 Ark. 312; *St. Louis, I. M. & S. Ry. Co.* v. *Worthen,* 52 Ark. 529.

As a mere matter of classification, it would seem that appellee could not have complained if the statute had been limited to the property of railroads, and, if so, it could suffer no injury from the inclusion of the property of other corporations.

But we do not regard the statute as one classifying property for taxation. It makes no new classification of property for taxation, makes no changes in existing classifications, and does not provide for any new or additional levy of taxes, but only supplies a remedy for the collection of taxes past due under previous levies made under existing classifications.

In *Winona and St. Peters Land Co.,* v. *Minnesota,* 159 U. S. 526, it was held that a statute of Minnesota providing for the assessment and collection of back taxes on property which had escaped taxation by reason of having been omitted from the assessment, was not in conflict with the Fourteenth Amendment, and that even though the act could not be enforced as to personal property on account of a failure to provide for proper notice to the owner, it could be enforced against real property. The court said: ''The case is different from that of an ordinary tax law in which there may be some foundation for the claim that the Legislature is expected to make no discrimination, and would not attempt to provide for the collection of taxes on one kind of property without also making provision for collection of taxes on all other property equally subject to taxation.'' It was further held that a difference in the mode of assessment of property which had escaped taxation from the general mode of assessment, did not deprive the property owner of any constitutional right.

In *Weyerhaueser* v. *Minnesota,* 176 U. S. 550, a statute of Minnesota which provided for a reassessment of property which had been grossly undervalued for past years, was held not to be in conflict with the Fourteenth Amendment.

In *Florida, C. & P. R. R. Co.* v. *Reynolds,* 183 U. S. 471, it was held that railroad companies were not denied the equal protection of the laws by a statute of the State of Florida which provided for the assessment for certain years of such railroad property as had escaped taxation for such years, without providing for the assessment of

taxes for those years on other property not previously assessed.

In each of these cases the Supreme Court of the State has declared the statute not to be in conflict with the State Constitution.

It is insisted that these cases are not in point, because the *Weyerhaueser* case is based on fraud, and the others on the omission of property from the first assessments.

It is true that the statute involved in the *Weyerhaueser* case applied only to gross undervaluations and that the State Supreme Court held that the evidence was sufficient to show bad faith and that the action of the assessor was a practical fraud, but its decision was based upon a broader principle.   The court made with approval the following quotation from the opinion in *Street Railroad Company* v. *Morrow,* 87 Tenn. 406: "The Constitution and laws prescribed that all property should be assessed according to its value, and if by the misfeasance, or nonfeasance or mistake of the assessor, it is not assessed according to its value, but upon an arbitrary basis fixed by the assessor at far less than its value, why should the tax debtor escape simply because he has made payment?"   The court then added: "So, in this case, part payment of a just tax does not render the law unconstitutional because it compels full payment of a tax according to the value of the property, whether such inadequate assessment was the result of misfeasance or nonfeasance of the assessor.   When full payment according to a true valuation has been made by the owner, then he is protected by the provisions of the Constitution requiring equality and uniformity of taxation.   To this requisite he must submit, because all property should be assessed and taxes paid according to a true valuation."

Nor is the decision of the United States Supreme Court in the same case based upon any distinction, from a constitutional standpoint, between an undervaluation that is gross or made fraudulently, and one that is less in degree or made by mistake or from error of judgment; or between an undervaluation and an omission of property

from assessment. It was expressly stated that a gross undervaluation, which was the only kind involved in the case, is within the principle applicable to an entire omission of property. It was declared that whether the property was omitted from assessment or grossly undervalued it thereby escaped payment of its just share of the public burden, and that if the owner of property had a remedy in equity to correct an excessive valuation, it would be strange if the State, against a gross undervaluation of property, could not in the exercise of its sovereignty give itself a remedy for the illegal deficiency, and that that was the effect of the statute.

The following was quoted with approval from the opinion of the State Supreme Court: "It (the statute) merely sets in motion new proceedings to collect the balance of the State's claim, and there is no constitutional objection in the way of doing this."

The same principles controlled in the Florida case. The court, after explaining the character of the obligation to pay taxes, said: "They are not cancelled and discharged by the failure of duty on the part of any tribunal or officer, legislative or administrative. Payment alone discharges the obligation, and until payment the State may proceed by all proper means to compel the performance of the obligation. No statutes of limitation run against the State, and it is a matter of discretion with it to determine how far it will reach into the past to compel performance of this obligation."

In another part of the opinion, it is said: "If the State, as has been seen, has the power, in the first instance, to classify property for taxation, it has the same right of classification as to property which in past years has escaped taxation. We must assume that the Legislature acts according to its judgment for the best interest of the State. A wrong intent can not be imputed to it. It may have found that the railroad delinquent tax was large, and the delinquent tax on other property was small, and not worth the trouble of special provisions therefor. If taxes are to be regarded as mere debts, then the effort

of the State to collect from one debtor is not prejudiced by its failure to make a like effort to collect from another, and, if regarded in the truer light as a contribution to the support of Government, then it does not lie in the mouth of one called upon to make his contribution to complain that some other person has not been coerced into a like contribution."

The following are some of the other cases supporting these views: *Sturges v. Carter,* 114 U. S. 519; *Street Railroad Co. v. Morrow,* 87 Tenn. 406; *Smoky Mountain Land etc. Co. v. Lattimore,* 119 Tenn. 636; *County of Redwood v. Winona & St. Peter Land Co.,* 42 Minn. 181; *Anderson v. Ritterbusch* (Okla.), 98 Pac. 1002; *People v. Seymour,* 16 Cal. 332.

(7)   It is further insisted that the action of assessors and supervising boards and commissions created by the general revenue law of the State for the assessment of property for taxation and for the correction of errors and irregularities, is judicial in its character and conclusive upon the State, except in cases of fraud, in the absence of a statute providing for a review by the courts, and that to set aside, by retrospective legislation, as to a limited number or class, the judicial acts of such tribunals, after they have become final, would be withdrawing from such persons or class the equal protection of the laws.

The following cases are cited to show the judicial character and conclusive effect of the acts of such tribunals. *Stanley v. Supervisors of Albany,* 121 U. S. 535; *State* ex rel. *Norwood v. K. C. & M. R. & B. Co.,* 106 Ark. 248; *Collier v. Board of Directors,* 106 Ark. 151; *Shibley v. Fort Smith & V. B. District,* 96 Ark. 410; *State v. Little,* 94 Ark. 217; *Memphis L. & T. Co. v. St. Francis Levee Dist.,* 64 Ark. 258; *Wells Fargo & Co.'s Express v. Crawford County,* 63 Ark. 576; *Ex parte Fort Smith & Van Buren Bridge Co.,* 62 Ark. 461; *C. B. & Q. Ry. Co. v. Babcock,* 204 U. S. 585.

The rule established by these cases makes such action final only in the absence of any statute authorizing a review, and the argument against the constitutionality of

such a statute by reason of its being retrospective and failing to include all property, is answered, we think, by the authorities already cited.

In the *Weyerhaueser* case, it was urged that when the valuation and assessment of the property had gone through their regular course, and the taxes had been paid, the same result follows as from the satisfaction of a judgment in an ordinary civil action; that the matter had then become *res adjudicata,* and could only be attacked in a direct procedure for fraud. The Supreme Court of Minnesota said: "It is to be observed that this is not an attack upon the original assessment so as to have the amount then assessed and to have the taxes thereon then levied and paid declared void. To that extent the amount is recognized as legitimate and upheld."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The act does not assume to set aside the proceedings which have been already had, but which have resulted in the State collecting only a part of its claim. It merely sets in motion new proceedings to collect the balance of the claim."

The United States Supreme Court, in the same case, said that the objection that the first assessments are final against any power of review could not be sustained, citing the *Winona and St. Peter Land Co.* v. *Minnesota* case, 159 U. S. 526, to the same effect.

The same court said in the *Florida* case: "It will be perceived that there was no new levy of taxes. No act of the Legislature was passed imposing an additional burden upon the property of the State in general, or upon any particular property, but the case is one in which general levies having been made for the years named certain property which ought to have paid taxes under them, and thus contributed its share to the expenses of the State, failed to do so, and the effort is to compel that property to discharge its obligation. The objection is not that the property ought not during these years to have paid its proportion of the taxes, but that it ought not now to be compelled to pay such proportion because certain

other property was similarly situated, and no effort is made to compel payment from it.''

The Supreme Court of Minnesota said in *County of Redwood* v. *Winona & St. Peter Land Co.,* 40 Minn. 512: ''Such statutes are purely remedial in their nature, and only go to confirm existing obligations.'' * * * ''The principle of all the cases is that the taxing power, when acting within its legitimate sphere, is one which knows no stopping place until it has accomplished the purpose for which it exists, viz., the actual enforcement and collection from every lawful object of taxation of its proportionate share of the public burdens; and, if prevented by an obstacle, it may return again and again until, the way being clear, the tax is collected.''

In the case of *King* v. *Mullins,* 171 U. S. 404, the court said: ''The judiciary should be very reluctant to interfere with the taxing systems of a State, and should never do so unless that which the State attempts to do is in palpable violation of the constitutional rights of the owners of property.''

The Supreme Court of California said of an act of the Legislature providing for the collection of delinquent taxes for certain years: ''It is difficult to see upon what principle the power of the Legislature to do this can be denied. The Legislature, representing the mass of political powers, is only restrained by express limitations or restrictions in the Constitution. We see no limitations or restrictions on this subject. No obligation of a contract is invaded; property is not taken for public use without compensation; nor is it taken without due course of law. The citizen is only made to pay what he owes, and he is made to pay it in the ordinary mode adopted for the legal coercion of other debts.'' * * *

And, again: ''The exercise of the taxing power is a sovereign attribute. The mode of ascertainment and collection of the tax is a matter of legislative discretion. What the Legislature may do, as a general thing, it may do in its own way and at its own time. There is a general power to tax; there is no restriction of mode, nor is

there any limitation of time by the organic law. Unless restrained by the Constitution, the Legislature have plenary power over the subject. Upon what principle, then, can it be contended that the Legislature can not as well make a man pay his taxes when, from accident or oversight, or his own remissness, the time for payment has passed, or the mere mode of charging him has not been followed, as they could in the first instance direct the tax?

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The question is, as to the mere power of the enforcement of a duty; and the exercise of the power may be made at any time, so long as the duty remains." *People* v. *Seymour,* 16 Cal. 332.

The only question involved in the case of *State* ex rel. v. *K. C. & M. R. & B. Co.,* 106 Ark. 248, was whether the statute prior to the amendment of 1913 gave the State a remedy by way of review in cases of mere undervaluation of property or only where the assessing boards or officers had proceeded on the wrong basis of valuation, in omitting some property or element of value, or in adopting the wrong basis of estimating value. What was said therein as to the finality of the acts of assessing boards and officers had relation to that issue. It was said to be the declared policy to treat their findings as final except where otherwise expressly provided by statute. No question was raised or decided as to the extent of the legislative power to grant a remedy by review where there had been a mere undervaluation.

(8) The acts of assessing officers and boards can not be considered as final in the sense that they are beyond the power of the Legislature to provide for correcting them either for fraud or errors of judgment.

"It may be that such a law will work inconvenience and annoyance to the citizen, but all tax laws are odious and vexatious. It is said the citizen ought to know when he is through with the tax gatherer, but he will know when he has paid his taxes on his property according to its value. He will know then that he is secure against re-

assessment, and the law will protect him." *Street Railway* v. *Morrow,* 87 Tenn. 406.

(9) The owner of property which has for any reason escaped payment of a part of its just share of taxation can not have a vested right to immunity from payment of the balance due. The immunity can exist only so long as there is no remedy for its collection. Such claim to exemption from payment is not a right at all, but rather the failure to collect is a wrong against the public. There is no direct constitutional prohibition against retrospective legislation, and "there is no such thing as a vested right to do wrong, and a Legislature, which in its acts not expressly authorized by the Constitution, limits itself to correcting mistakes, and to providing remedies for the furtherance of justice, can not be charged with violating its duty or exceeding its authority." Chief Justice Parker, in *Foster* v. *Essex Bank,* 16 Mass. 245.

Such acts are of a remedial character, and are the peculiar subjects of legislation. They are not liable to the imputation of being assumptious of judicial power. *Freeborn* v. *Smith,* 2 Wall. 160; *League* v. *Texas,* 184 U. S. 156.

With the justice, wisdom, or policy, or propriety of a statute, the courts have nothing to do if there is no infringement of some constitutional provision. These are matters for legislative determination and the enactment of the statute expresses and declares the legislative judgment. 26 A. & E. Enc. Law 569; *Com. Schl Dist.* v. *Oak Grove Sp. Schl. Dist.,* 102 Ark. 411.

It may be difficult for the reviewing courts to determine, after lapse of time, the true value of property alleged to have been undervalued, but this is not a constitutional objection to the act. The statute does not contemplate that any property will be made to bear any greater burden of taxation than it would have borne if it had been originally assessed at its proper value. It expressly provides that the court may hear testimony, and that it shall determine the amount due. Kirby's Digest, § § 7207, 7208.

It may not be possible to ascertain with certainty the exact value to be placed upon every piece of property so as to make it equal and uniform with the average valuation of all property. "Absolute equality and uniformity are seldom, if ever, attainable. *Shibley* v. *Ft. S. & V. B. Dist, supra; Stanley* v. *Supervisors of Albany,* 121 U. S. 535.

It must be presumed that the courts will give persuasive force to all original assessments fairly made, and will not set them aside on account of mere error in judgment without clear and satisfactory proof. This is demanded by sound policy and the natural justice of the case.

No question of innocent purchaser is presented by the facts of the case, as the appellee has at all times owned the property involved.

We conclude that the statute in controversy is not a statute for the classification of property for taxation. It was a legislative determination that property then within the jurisdiction of the State had in past years escaped the payment in whole or in part of its just proportion of the burden of taxation, by reason of not having been assessed and valued upon a wrong basis or by reason of having been undervalued, and that it was for the best interest of the State that a remedy should be provided whereby the amount which should have been assessed against certain property may be ascertained and the property forced to contribute the full amount of its proportionate share of taxation. We can not say that the failure to include within its terms individual as well as corporate property was an arbitrary discrimination against corporations. It can not be presumed that its enforcement will result in unequal taxation. It should rather tend to make it equal and uniform.

The payment of a part of the amount justly due did not release the tax debtor from his obligation to pay the balance. That one is compelled to pay what he justly owes while others are not sued, is not an infringement of any constitutional right, nor even a just cause of com-

plaint. To compel all to be sued might result in such a burden of litigation as to make it not worth while to sue any. This was a matter for the exercise of the legislative judgment and discretion.

The legislative power to provide for the collection of taxes remaining unpaid by reason of an insufficient assessment or a failure to assess, can not be made to depend upon the cause or reason for the insufficient assessment or omission to assess; nor upon whether the action complained of was actually or constructively fraudulent, or the result of a mere error of judgment; nor upon whether there was a gross undervaluation or an undervaluation in less degree; nor, upon whether the property escaped taxation entirely or only in part; nor whether the amount due is large or small.

Section 5, article 16, of the State Constitution, is satisfied by assessments and fixed methods of collection of taxes according to the same rate and proportionate valuation and applies to prospective statutes only. It has no application to statutes which only provide a remedy for the collection of taxes already past due. It was not intended to afford constitutional protection to the owner of property which has escaped taxation against the enforcement of his obligation unless all others similarly situated are compelled to pay.

While the general jurisdiction of courts of equity to correct errors in assessments is confined to cases of fraud or mistake, the power of the Legislature in that respect is not limited.

(10)    The fact that no statutory remedy exists for the correction of an erroneous assessment at the time it is made does not preclude the Legislature from granting a remedy at a subsequent time. We are unable to find that the act in controversy violates any constitutional provision of either the State or Federal Constitution.

The complaint states a cause of action within the provisions of the statute, and it therefore follows that the chancery court erred in sustaining the demurrer thereto and in dismissing the suit.

The cause is reversed and remanded with instructions to overrule the demurrer to the complaint, and for further proceedings in accordance with this opinion.

WOOD, J., dissents.

SMITH, J., disqualified.